# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2021-NMCA-065

Filing Date: September 14, 2021

No. A-1-CA-37773

WEATHERFORD ARTIFICIAL LIFT
SYSTEMS, LLC, a Delaware
corporation,

      Plaintiff-Appellant,

and

WEATHERFORD U.S., L.P.,
a Delaware corporation,

      Plaintiff-Appellant,

v.

STEPHANIE SCHARDIN CLARKE, Secretary
of Taxation & Revenue, and NEW MEXICO
TAXATION & REVENUE DEPARTMENT,

      Defendants-Appellees.

APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Raymond Z. Ortiz, District Judge

Released for Publication December 14, 2021.

Joe Lennihan
Santa Fe, NM

for Appellants

Hector H. Balderas, Attorney General
David Mittle, Special Assistant Attorney General
Santa Fe, NM

for Appellees

## OPINION

**ATTREP, Judge.**

**{1}** In this consolidated appeal, Plaintiffs Weatherford Artificial Lift Systems, LLC and Weatherford U.S., L.P. (collectively, Taxpayers) appeal the district court's grant of summary judgment in favor of Defendants John Monforte[1] and the New Mexico Taxation and Revenue Department (collectively, the Department) based on the doctrines of exhaustion of administrative remedies and primary jurisdiction. We reverse.

**{2}** This case involves the exhaustion requirements for a taxpayer who seeks to challenge the Department's denial of successive applications for tax credits. Generally speaking, a taxpayer who is dissatisfied with the Department's denial of a tax credit may pursue one of two remedies under the Tax Administration Act—an administrative protest or a claim for refund—and must exhaust the chosen remedy. *See* NMSA 1978, §§ 7-1-22 (2015), -24 (2015, amended 2019), -26(C) (2015, amended 2021). An administrative protest is decided by the Administrative Hearings Office, the outcome of which then may be appealed to this Court. *See* §§ 7-1-22, -24 (2015). A claim for refund is decided by the Department, the denial of which then may be contested before the district court in a civil action. *See* §§ 7-1-22, -26(C)(2) (2015). In this appeal, the Department takes the position that when a taxpayer pursues successive denials of tax credits raising a common issue, the taxpayer must have the issue resolved in the forum where it was initially raised or is otherwise bound by their choice of remedy for the original denial. We find no support in the Tax Administration Act for the Department's position, and we conclude the Act requires only that a taxpayer denied a given credit exhaust their remedy for that denied credit before seeking relief from the courts.

**{3}** In light of this, we hold that, based on the undisputed facts in this case, Taxpayers exhausted their administrative remedies. We further hold that the doctrine of primary jurisdiction, which was raised for the first time at the hearing on the Department's motions for summary judgment, does not apply in this case. For these reasons, we reverse the district court's grant of summary judgment in favor of the Department.

**BACKGROUND**[2]

**{4}** This case involves Taxpayers' attempt to obtain high-wage jobs tax credits under NMSA 1978, Section 7-9G-1 (2013, amended 2021).[3] The Legislature enacted Section 7-9G-1 "to provide an incentive for urban and rural businesses to create and fill new

---

[1]Defendant John Monforte was the acting Secretary of Taxation and Revenue at the time summary judgment was entered. Mr. Monforte has since been replaced by Secretary Stephanie Schardin Clarke.
[2]The facts in this opinion are taken from the uncontested allegations in the complaint and the briefing on the motions for summary judgment.
[3]Although the Legislature amended Section 7-9G-1 in 2016, 2019, and again in 2021, the parties agree that the 2013 version of Section 7-9G-1 applies. Accordingly, all references in this opinion to Section 7-9G-1 are to the 2013 version of that statute. As for the procedural statutes applicable in this case, i.e., the Tax Administration Act, NMSA 1978, §§ 7-1-1 to -83 (1965, as amended through 2021), and the Administrative Hearings Office Act, NMSA 1978, §§ 7-1B-1 to -10 (2015, as amended through 2019), the parties cite different versions in their briefing. Throughout this opinion, we cite the versions of these statutes in effect in December 2016, the time Taxpayers made the applications for high-wage jobs tax credits at issue in this case.

high-wage jobs in New Mexico." Section 7-9G-1(B). The statute permits an "eligible employer" to claim a credit for each "new high-wage economic-based job" filled by an "eligible employee." Section 7-9G-1(A), (C). As relevant to this case, an "eligible employer" is defined as an employer who "made more than fifty percent of its sales of goods or services produced in New Mexico to persons outside New Mexico during the applicable qualifying period[.]" Section 7-9G-1(M)(3)(a). A "qualifying period" is "the period of twelve months beginning on the day an eligible employee begins working in a new high-wage economic-based job or the period of twelve months beginning on the anniversary of the day an eligible employee began working in [such] job[.]" Section 7-9G-1(M)(6).

**{5}** In December 2015 Taxpayers applied to the Department for high-wage jobs tax credits for twenty-one employees whom Taxpayers had hired between 2010 and 2015 (the 2015 Credits). *See* § 7-9G-1(J) (providing that an eligible employer must apply to the Department in order to receive a high-wage jobs tax credit). After the Department denied the 2015 Credits, on grounds not of record, Taxpayers filed written protests to be heard by the Administrative Hearing Office (AHO). *See* § 7-1-24(A)(3)(a), (B) (2015) (providing that a taxpayer may dispute the denial of a credit by filing a written protest); § 7-1-26(C)(1) (2015) (same); *see also* § 7-1B-8 (2015) (providing the procedures for the AHO to follow upon the filing of a protest). The protests were consolidated and, as of the completion of briefing in this appeal, have yet to be resolved.[4] Although the protests of the 2015 Credits are not before this Court in this appeal, the Department, as we explain, relied on Taxpayers' election to protest the denial of these credits to support its motions for summary judgment.

**{6}** In December 2016 Taxpayers applied to the Department for high-wage jobs tax credits for 101 employees whom Taxpayers had hired between 2011 and 2016 (the 2016 Credits). The employees for whom Taxpayers sought credits in the 2016 Credits were not those included in their application for the 2015 Credits. The Department denied the 2016 Credits for a variety of reasons, including on the ground that Taxpayers were not "eligible employers." Instead of filing administrative protests, as Taxpayers had done with the denials of the 2015 Credits, Taxpayers claimed refunds for the denied 2016 Credits, and, upon the Department's denials of the claims, pursued those claims through two civil actions in the First Judicial District Court, in Santa Fe County.[5] *See* § 7-1-26(C)(2) (2015) (allowing a taxpayer who has been denied a claim for refund to seek a remedy by filing a complaint in the district court for Santa Fe County alleging that the Department is indebted to the taxpayer).

**{7}** In Taxpayers' cases before the district court, the Department filed identical motions for summary judgment, contending the district court lacked jurisdiction because

---

[4]According to Taxpayers' reply brief, the parties agreed to stay the protests before the AHO, and, as far as we know, the protests remain stayed and the hearing officer has not issued a decision and order.
[5]Weatherford Artificial Lift Systems, LLC and Weatherford U.S., L.P. each filed a civil action in district court. These cases were litigated together but were never officially consolidated.

Taxpayers had failed to exhaust their administrative remedies.[6] The Department argued that the 2015 and 2016 Credits "involved some of the same timeframe" and clarified in reply that this meant Taxpayers' status as eligible employers was the same for both the 2015 and 2016 Credits.[7] From this, the Department argued that Taxpayers were precluded from seeking relief in district court as to the 2016 Credits because they elected to pursue their 2015 Credits via administrative protests before the AHO. As legal support, the Department cited Section 7-1-22, which makes the exhaustion of administrative remedies a prerequisite to a court's jurisdiction over a matter, and Section 7-1-26(C) (2015), which provides that a taxpayer may pursue only one remedy upon the denial of a credit—i.e., a written protest to be heard by the AHO, or a claim for refund, the denial of which is heard in the district court. As factual support, the Department attached a copy of a joint motion in the consolidated administrative protest of the 2015 Credits, in which the parties agreed that "[t]he timeframes involving the [p]rotest and the [c]omplaint overlap." Taxpayers responded that they had exhausted their administrative remedies as to the 2016 Credits and it was irrelevant that they had elected to protest their 2015 Credits, given that those credits were different from the 2016 Credits.

**{8}**     At the motions hearing, in addition to advancing its exhaustion argument, the Department argued for the first time that, under the doctrine of "primary jurisdiction," the AHO, given its expertise, should first be allowed to decide whether Taxpayers were eligible employers. The district court granted the Department's motions for summary judgment, invoking the doctrines of exhaustion of administrative remedies and primary jurisdiction. Afterward, Taxpayers attempted to append the 2016 Credits to their administrative protests of the 2015 Credits, but the AHO denied the request.

**{9}**     Taxpayers appealed, and we consolidated their appeals prior to briefing.

**STANDARD OF REVIEW**

**{10}**   We generally review the district court's grant of summary judgment de novo. *Freeman v. Fairchild*, 2018-NMSC-023, ¶ 14, 416 P.3d 264. Summary judgment is only appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Rule 1-056(C) NMRA. When, however, a district court is called upon to determine subject matter jurisdiction, as is the case with exhaustion of administrative remedies, the court is free to resolve factual disputes. *See Gzaskow v. Pub. Emps. Ret. Bd.*, 2017-NMCA-064, ¶¶ 18, 22-23, 403 P.3d 694; *South v. Lujan*, 2014-NMCA-109, ¶¶ 8-9, 336 P.3d 1000. In this case, the

---

6The Department previously filed motions to dismiss for lack of subject matter jurisdiction, raising the same arguments as those presented in the motions for summary judgment. These motions to dismiss were converted into, and heard in conjunction with, the motions for summary judgment by the district court.

7As noted, the record does not reveal the bases for the denials of Taxpayers' 2015 Credits. The Department seems to assume the denials of the 2015 Credits were based, at least in part, on a finding that Taxpayers were not eligible employers. There, however, is nothing in the record sustaining this assumption. We nevertheless assume Taxpayers' 2015 Credits were denied on this ground because Taxpayers do not dispute this point.

relevant facts appear undisputed, and the district court made no factual findings as part of its exhaustion of administrative remedies ruling. Consequently, our review is de novo. *See City of Albuquerque v. BPLW Architects & Eng'rs, Inc.*, 2009-NMCA-081, ¶ 7, 146 N.M. 717, 213 P.3d 1146 ("[I]f no material issues of fact are in dispute and an appeal presents only a question of law, we apply de novo review[.]").

**{11}** In undertaking our de novo review of the grant of summary judgment, we bear in mind that the party moving for summary judgment has the burden of making a prima facie showing that there is "an absence of a genuine issue of fact, and that it [is] entitled as a matter of law to judgment in its favor." *Brown v. Taylor*, 1995-NMSC-050, ¶ 8, 120 N.M. 302, 901 P.2d 720. If the moving party fails in this regard, the non-moving party need not make any factual showing because summary judgment is not proper as a matter of law. *See id.*

## DISCUSSION

**{12}** The district court invoked the doctrines of exhaustion of administrative remedies and primary jurisdiction to grant summary judgment for the Department. How and why the district court applied these doctrines in this case, however, is less than clear. After asserting that the doctrines applied, the district court merely stated that Taxpayers "earlier sought relief before the [AHO] and the subject matter of [Taxpayers'] complaint[s] must be resolved in the administrative protest[s] now pending before the [AHO]." The district court did not cite any legal authority, other than Section 7-1-26(C) (2015), or further explain its ruling.[8] Upon examination, neither doctrine supports the grant of summary judgment in this case.

## I. Exhaustion of Administrative Remedies

**{13}** Taxpayers argued below and now argue on appeal that they exhausted the statutorily mandated administrative remedies as to the 2016 Credits when they pursued the denials of their high-wage jobs tax credits through claims for refunds and the Department denied those claims. The Department does not dispute this point but takes the seemingly novel position that because Taxpayers challenged the 2015 Credits through protests, which have yet to be resolved, they are bound by this choice for the 2016 Credits. In support, the Department simply states that Taxpayers "elected to have the issue of whether [they are] eligible employer[s] determined by the [AHO,]"[9] and

---

8While we recognize that a district court judge is not required to state reasons for granting summary judgment, other than as provided in Rule 1-056(C), *see Garrett v. Nissen Corp.*, 1972-NMSC-046, ¶¶ 11-12, 84 N.M. 16, 498 P.2d 1359, *overruled on other grounds by Klopp v. Wackenhut Corp.*, 1992-NMSC-008, ¶ 12, 113 N.M. 153, 824 P.2d 293, the failure to do so increases the risk of an erroneous grant of summary judgment and makes appellate briefing and resolution more arduous. Although district court judges are not required to provide a cogent explanation why summary judgment is warranted, it is our preference that they do.

9In making this argument below and now on appeal, we note that the Department relied exclusively on exhaustion of administrative remedies. The Department did not rely, for instance, on res judicata or collateral estoppel. We accordingly do not endeavor to decide how such doctrines might apply in this case.

further asserts that "[a]n 'eligible employer' is defined by qualifying periods and it is not disputed that the same qualifying periods were before both the AHO and the district court."[10] Because the Department does not expound on these points, its position is difficult to discern, to say the least. As best we can tell, the Department appears to argue either that the AHO had to first resolve the eligible employer "issue" initially raised in the 2015 Credits or that Taxpayers had to pursue the same remedy for their 2016 Credits they chose with regard to their 2015 Credits—because the matters raise the same eligible employer "issue." For the reasons that follow, the Department's position does not withstand scrutiny.

## A.     The Tax Administration Act's Exhaustion Requirements

**{14}**    In this case, we consider the Tax Administration Act's exhaustion requirements for a taxpayer challenging the Department's successive denials of tax credits, where those denials raise a common issue. This presents a question of statutory construction. *See Kilmer v. Goodwin*, 2004-NMCA-122, ¶ 13, 136 N.M. 440, 99 P.3d 690. "The meaning of language used in a statute is a question of law that we review de novo." *U.S. Xpress, Inc. v. N.M. Tax'n & Revenue Dep't*, 2006-NMSC-017, ¶ 6, 139 N.M. 589, 136 P.3d 999 (internal quotation marks and citation omitted). Our "guiding principle when construing statutes is to determine and give effect to legislative intent." *Fowler v. Vista Care*, 2014-NMSC-019, ¶ 7, 329 P.3d 630 (internal quotation marks and citation omitted). "The primary indicator of the [L]egislature's intent is the plain language of the statute." *U.S. Xpress, Inc.*, 2006-NMSC-017, ¶ 6.

**{15}**    When a taxpayer has been denied a tax credit, like the high-wage jobs tax credit, the Tax Administration Act provides two exclusive remedies—the protest remedy or the refund remedy. Under the protest remedy in Section 7-1-24 (2015), a taxpayer may dispute the denial of "a credit" by filing a written protest to be heard by the AHO. *See* § 7-1-24(A)(3)(a), (B) (2015) (describing an administrative protest); *see also* § 7-1-26(C)(1)(a) (2015) (same). Under the refund remedy in Section 7-1-26 (2015), a taxpayer may claim a refund from the Department for "any credit" denied. Section 7-1-26(A) (2015). The Tax Administration Act imposes an election of remedies

---

[10]While the Department is correct that whether a taxpayer is an "eligible employer" is determined in part by qualifying periods, *see* § 7-9G-1(D), (M)(3)(a), the record here plainly does not establish that the 2015 and 2016 Credits involve the same qualifying periods. In support of its contention in this regard, the Department cites only the parties' agreement, in the joint motion to hold the protest of the 2015 Credits in abeyance, that the "*timeframes*" involved in the 2015 and 2016 Credits "*overlap*." But a qualifying period is not simply a calendar year, as the Department intimates; it instead is a 365-day period that depends on (1) the date the employee for whom the tax credit is being sought began work, *see* § 7-9G-1(M)(6); and (2) which one of four rolling 365-day periods the credit is being sought for that particular employee, *see* § 7-9G-1(D). Critically, the record does not reveal the hiring date for any of the twenty-one employees hired between 2010 and 2015 whom Taxpayers claimed for the 2015 Credits or any of the 101 employees hired between 2011 and 2016 whom Taxpayers claimed for the 2016 Credits. *See Zamora v. St. Vincent Hosp.*, 2014-NMSC-035, ¶ 9, 335 P.3d 1243 (examining the whole record when reviewing an order on summary judgment). To the extent the Department's arguments are premised on the factual contention that the qualifying periods, and thus the eligible employer issue, were the same for the 2015 and 2016 Credits, the Department failed to make a prima facie showing in this regard. *See Brown*, 1995-NMSC-050, ¶ 8.

requirement—providing that a taxpayer "may elect to pursue no more than one of the[se] remedies[,]" and "[a] person who timely pursues more than one remedy shall be deemed to have elected the first remedy invoked." Section 7-1-26(C) (2015); *see also* § 7-1-23 (2013) ("The pursuit of one of the two remedies . . . constitutes an unconditional waiver of the right to pursue the other.").

**{16}**     Regardless of the remedy pursued, our courts have made clear that the Tax Administration Act requires the exhaustion of administrative remedies prior to a taxpayer invoking the jurisdiction of the courts. *See U.S. Xpress, Inc.*, 2006-NMSC-017, ¶¶ 7-12; *Neff v. State ex rel. Tax'n & Revenue Dep't*, 1993-NMCA-116, ¶ 16, 116 N.M. 240, 861 P.2d 281; *see also* § 7-1-22 (requiring a taxpayer to exhaust administrative remedies before a court has jurisdiction over the matter). Depending on the remedy pursued, exhaustion of administrative remedies occurs at different points, as provided in Section 7-1-22:

> No court of this state has jurisdiction to entertain any proceeding by a taxpayer in which the taxpayer calls into question the taxpayer's liability for any tax or the application to the taxpayer of any provision of the Tax Administration Act, except as a consequence of the appeal by the taxpayer to the court of appeals from the order of a hearing officer, *or* except as a consequence of a claim for refund as specified in Section 7-1-26.

(Emphasis added.) *See also U.S. Xpress, Inc.*, 2006-NMSC-017, ¶ 8 ("Section 7-1-22 has been interpreted as requiring taxpayers to follow the procedures in the Tax Administration Act."). For a taxpayer who pursues the protest remedy, exhaustion occurs once the hearing officer issues a written decision and order. *See* § 7-1B-8(C) (2015); *see also* § 7-1-24(B) (2015) (providing that the protest be conducted in accordance with the Administrative Hearings Office Act). This decision and order may then be appealed to this Court. *See* §§ 7-1-22, -25(A). For a taxpayer who chooses not to file a protest and instead pursues the refund remedy, exhaustion occurs once the Department denies the claim for refund, at which point the taxpayer may commence a civil action in district court.[11] *See* §§ 7-1-22, -26(C)(2) (2015).

**{17}**     As discussed, Taxpayers argue that they pursued the refund remedy with regard to their 2016 Credits and exhausted their administrative remedies when their claims for refunds were denied by the Department, at which point they were free to file civil actions in district court. *See* § 7-1-26(A), (C)(2) (2015). In contrast, the Department, relying on the statutes discussed above, argues that the AHO had to first resolve the eligible employer "issue" initially raised in the 2015 Credits or that Taxpayers had to pursue the

---

[11]We note the Tax Administration Act also provides that a taxpayer may file a written protest after seeking and being denied a claim for refund. *See* § 7-1-24(A)(3)(b) (2015) (allowing for the protest of a denied claim for refund); § 7-1-26(A), (C)(1) (2015) (same). Our use of the term "refund remedy" in this opinion, however, refers only to the process wherein a taxpayer pursues a claim for refund with the Department and, upon denial of the same, seeks review from the district court via civil action. *See* § 7-1-26(A), (C)(2) (2015).

same remedy for their 2016 Credits they chose with regard to their 2015 Credits, again because the matters raise the same eligible employer "issue." The plain language of the Tax Administration Act supports Taxpayers' position.

**{18}** Starting with Sections 7-1-24 (2015) and 7-1-26 (2015), these provisions reference a (or any) denied credit and set out how a taxpayer may challenge a denied credit through one of two remedies. Section 7-1-22 in turn requires a taxpayer to exhaust the remedy chosen to challenge a denied credit. Sections 7-1-24 (2015) and 7-1-26 (2015) do not reference "issues," like eligible employer status; and they do not provide for a remedy to challenge such an issue, separate and apart from a denied credit. Nothing in Section 7-1-22, in turn, requires the resolution of an "issue" by, for instance, the AHO before a subsequent claim for refund raising the same issue will be considered exhausted. Contrary to the Department's intimations, these provisions tie the selection and exhaustion of remedies, not to an "issue" but, to a denied credit. In short, they do not support the Department's assertion that Taxpayers had to have the eligible employer "issue" in the 2015 Credits resolved by the AHO prior to seeking judicial review of the 2016 Credits.

**{19}** Turning next to the election of remedies provision, Section 7-1-26(C) (2015) limits a taxpayer to the selection of only one of the two remedies—i.e., the protest remedy or the refund remedy—and a taxpayer who pursues more than one is deemed to have selected the first. *See also* § 7-1-23 (2013). Of significance, Section 7-1-26(C) (2015) imposes the election of remedies limitation on "a" or "the" denied credit. That is, a taxpayer is limited to the selection of one remedy for each denied credit. *See U.S. Xpress, Inc.*, 2006-NMSC-017, ¶ 9 (reading special significance into the Legislature's use of the singular terms "a taxpayer" and "the taxpayer" in Section 7-1-22 (1995), in concluding that each individual taxpayer must exhaust their administrative remedies for each individual refund claim). Contrary to the Department's intimations, nothing in Section 7-1-26(C) (2015) imposes the election of remedies limitation on "issues" or on a series of denied credits raising common issues. In short, Section 7-1-26(C) (2015) does not support the Department's assertion that, because Taxpayers pursued the protest remedy for the denial of the 2015 Credits, they were required to pursue that same remedy for the denial of the 2016 Credits.

**{20}** What is more, when the Legislature has seen fit to permit the review of the same or related issues together, it has done so explicitly. In the Administrative Hearings Office Act, for instance, the Legislature provided a mechanism, used at the taxpayer's discretion, to have two or more protests containing related issues combined and heard jointly. *See* § 7-1B-8(D) (2015) ("A taxpayer with two or more protests containing related issues may request that the protests be combined and heard jointly."). The Department does not cite, and we have not found, any similar provision allowing for—let alone mandating—a protest and a claim for refund raising common issues to be combined and heard together. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 (requiring "that the parties adequately brief all appellate issues to include an argument, the standard of review, and citations to authorities for each issue presented"); *cf. Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482

("Where a party cites no authority to support an argument, we may assume no such authority exists."). We therefore presume the Legislature intended to include none. *Cf. United Rentals Nw., Inc. v. Yearout Mech., Inc.*, 2010-NMSC-030, ¶ 25, 148 N.M. 426, 237 P.3d 728 ("[I]f a statute on a particular subject omits a particular provision, inclusion of that provision in another related statute indicates an intent that the provision is not applicable to the statute from which it was omitted." (alteration, internal quotation marks, and citation omitted)).

**{21}** In sum, had the Legislature intended to mandate that "issues" like eligible employer status be resolved in the same proceeding or forum or that successive denials of credits raising the same issues be challenged using the same remedy, it certainly could have done so. *See State v. Greenwood*, 2012-NMCA-017, ¶ 38, 271 P.3d 753 ("The Legislature knows how to include language in a statute if it so desires." (alteration, internal quotation marks, and citation omitted)). Based on our review of the Tax Administration Act's plain language, it did not. The Act instead merely requires that a taxpayer exhaust whatever remedy it has chosen to challenge the denial of a given credit. *See Reule Sun Corp. v. Valles*, 2010-NMSC-004, ¶ 15, 147 N.M. 512, 226 P.3d 611 ("Under the plain meaning rule, when a statute's language is clear and unambiguous, we will give effect to the language and refrain from further statutory interpretation. We will not read into a statute language which is not there, especially when it makes sense as it is written." (internal quotation marks and citation omitted)). We therefore reject the Department's contentions to the contrary.

**B.      Taxpayers Exhausted Their Administrative Remedies as to the 2016 Credits**

**{22}** With these statutory requirements in mind, we examine the 2016 Credits and conclude the district court erred in ruling that Taxpayers failed to exhaust their administrative remedies as to these credits. Taxpayers alleged that after their applications for high-wage jobs tax credits were denied, they filed claims for refunds, which the Department also denied. Taxpayers then timely filed civil complaints in the First Judicial District Court. All of these facts were admitted by the Department; and in its motions for summary judgment, the Department did not assert any facts contrary to these admitted facts. *See Vives v. Verzino*, 2009-NMCA-083, ¶ 10, 146 N.M. 673, 213 P.3d 823 ("When a party actually admits, for purposes of the summary judgment motion, the veracity of the allegations in the complaint, a reviewing court should consider the facts pleaded as undisputed and determine if a basis is present to decide the issues as a matter of law." (alteration, internal quotation marks, and citation omitted)).

**{23}** These undisputed facts establish that Taxpayers exhausted their administrative remedies as to the 2016 Credits prior to filing suit in district court. Taxpayers elected to pursue the refund remedy for their 2016 Credits, and the Department denied their claims for refunds. We conclude that, at this point, Taxpayers had exhausted their administrative remedies and were permitted to file civil actions in district court. *See* §§ 7-1-22, -26(C)(2) (2015). *See generally Ovecka v. Burlington N. Santa Fe Ry. Co.*, 2008-NMCA-140, ¶ 9, 145 N.M. 113, 194 P.3d 728 (providing that "when no facts are in

dispute and the undisputed facts lend themselves to only one conclusion, the issue may properly be decided as a matter of law"). The district court's grant of summary judgment based on a contrary conclusion was therefore erroneous.

## II.        Primary Jurisdiction

**{24}**    We turn now to the district court's second basis for granting summary judgment in this case—the doctrine of primary jurisdiction. Taxpayers largely argue that the issue of primary jurisdiction was waived because the Department did not assert it in its answers or written motions. We need not reach Taxpayers' waiver argument, however, because we conclude the district court's invocation of primary jurisdiction was erroneous on the merits.

**{25}**    The doctrine of primary jurisdiction, like the doctrine of exhaustion of administrative remedies, is meant to accomplish coordination between the judicial and administrative arms of government. *See State ex rel. Norvell v. Ariz. Pub. Serv. Co.*, 1973-NMSC-051, ¶ 31, 85 N.M. 165, 510 P.2d 98; *Carangelo v. Albuquerque-Bernalillo Cnty. Water Util. Auth.*, 2014-NMCA-032, ¶ 74, 320 P.3d 492. Our Supreme Court has explained the circumstances under which each doctrine applies.

> 'Exhaustion' applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. 'Primary jurisdiction,' on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views.

*Norvell*, 1973-NMSC-051, ¶ 31 (internal quotation marks and citation omitted). "[P]rimary jurisdiction is essentially a doctrine of comity between the courts and administrative agencies[,]" *Gonzalez v. Whitaker*, 1982-NMCA-050, ¶ 8, 97 N.M. 710, 643 P.2d 274, and its application is discretionary, *see Carangelo*, 2014-NMCA-032, ¶ 75. The doctrine may be invoked "[i]f the issue presented to the court involves exclusively factual issues within the *peculiar* expertise of the [agency.]" *Norvell*, 1973-NMSC-051, ¶ 35 (emphasis added) (internal quotation marks and citation omitted); *see also Azar v. Prudential Ins. Co. of Am.*, 2003-NMCA-062, ¶ 92, 133 N.M. 669, 68 P.3d 909 ("The main factor in determining whether to invoke the doctrine . . . is whether there is the need for the particular expertise of the agency to resolve factual issues." (internal quotation marks and citation omitted)).

**{26}**    Before we examine whether primary jurisdiction was properly invoked under this standard, we pause to question whether this doctrine could have any application to this case at all. Here, Taxpayers' 2016 Credits were originally cognizable only with the Department, *see* § 7-1-22 (requiring the exhaustion of administrative remedies through

Section 7-1-24 or Section 7-1-26 before the courts have jurisdiction over the matter); Taxpayers, as we discussed, exhausted their administrative remedies as to the 2016 Credits, *see* Part B, paragraphs 22-23, *supra*; and the AHO lacks jurisdiction over the matter, *see* § 7-1B-6(C) (2015) (enumerating the powers of the AHO); § 7-1B-8(A) (2015) (providing that the AHO may conduct a hearing only "[u]pon timely receipt of a tax protest filed pursuant to the provisions of Section 7-1-24").[12] These circumstances counsel against the application of primary jurisdiction. *See Carangelo*, 2014-NMCA-032, ¶ 76 (holding that where a claim was originally cognizable with the agency alone, an essential element of primary jurisdiction was not met); *Eldridge v. Circle K Corp.*, 1997-NMCA-022, ¶ 21, 123 N.M. 145, 934 P.2d 1074 ("The doctrine of primary jurisdiction arises when *both* a court and an administrative agency have *concurrent* jurisdiction." (emphases added)).

{27}    Even if the doctrine of primary jurisdiction could be resorted to in this case, the Department nevertheless failed to establish that invocation of the doctrine was appropriate here. The Department contends generally that "[t]he regulatory scheme in New Mexico has placed with the special competence of the [AHO] matters arising under the Tax Administration Act," including the high-wage jobs tax credit.[13] In support, the Department cites Section 7-1-2(A)(16) (2016), which merely provides that the Tax Administration Act applies to and governs the high-wage jobs tax credit, and Section 7-1B-6(C)(1) (2015), which states that the AHO shall hear all protests pursuant to the provisions of the Tax Administration Act. These provisions do not establish that issues related to the high-wage jobs tax credit have been placed within the special competence of the AHO. To the contrary, the Legislature, as discussed, placed the adjudication of disputes involving tax credits, like the high-wage jobs tax credit, in the hands of both the AHO (when a protest is filed) and the district court (when a claim for refund is pursued)—not favoring the AHO over the courts, as the Department suggests. *See* §§ 7-1-24 (2015), -26(C) (2015). Even more problematic for the Department, it did not explain below, nor does it on appeal, why resolution of specific, factual issues raised in the 2016 Credits require the peculiar expertise of the AHO. *See Norvell*, 1973-NMSC-051, ¶¶ 36-43 (examining the statutory and regulatory provisions and the particular matter at issue to determine if the agency's peculiar expertise is needed to resolve factual issues); *Gonzalez*, 1982-NMCA-050, ¶¶ 11-13 (examining whether there are factual issues within the peculiar expertise of the agency or legal issues that are properly before the court). The record and the briefing in this case reveals no such factual issues, and we decline to pontificate on whether such issues could arise in cases of this type. *See Elane Photography, LLC*, 2013-NMSC-040, ¶ 70.

---

12Indeed, it appears the AHO already has determined it does not have jurisdiction to hear the 2016 Credits. When Taxpayers moved to append that matter to their 2015 Credits pending before the AHO, the AHO denied the request because the 2016 Credits were not properly before the AHO, pursuant to Section 7-1B-8 (2015).

13We assume, without deciding, that the doctrine of primary jurisdiction applies where, as here, there is an adjudicative body with purported expertise that is separate from the administrative agency. *See* § 7-1B-2 (creating the "administrative hearings office" and administratively attaching it the department of finance and administration).

**{28}** Finally, even were we to overlook all of the foregoing, there is yet another reason primary jurisdiction is unsuitable in this case. The remedy requested by the Department—entry of judgment in its favor—is not one available under the doctrine of primary jurisdiction. When this doctrine is properly invoked, a court may "suspend [the] judicial process pending referral of . . . issues to the administrative body for its views[,]" *Carangelo*, 2014-NMCA-032, ¶ 75 (internal quotation marks and citation omitted), or dismiss the case without prejudice, if the parties would not be unfairly disadvantaged. *See Reiter v. Cooper*, 507 U.S. 258, 268-69 (1993) ("Referral of the issue to the administrative agency does not deprive the court of jurisdiction; it has discretion either to retain jurisdiction or, if the parties would not be unfairly disadvantaged, to dismiss the case without prejudice."); *Gandy v. Wal-Mart Stores, Inc.*, 1994-NMSC-040, ¶ 12, 117 N.M. 441, 872 P.2d 859 (providing that dismissal or stay of the action is appropriate where the dispute is found to be within the primary jurisdiction of the agency). The Department cites no case where the doctrine of primary jurisdiction was invoked to enter judgment against a party, as was done here, and we therefore assume no such authority exists. *See Curry*, 2014-NMCA-031, ¶ 28.

**{29}** For all these reasons, the Department fails to make an initial showing that the doctrine of primary jurisdiction should be invoked in this case. *See Brown*, 1995-NMSC-050, ¶ 8. The district court's grant of summary judgment based on this doctrine was therefore erroneous.

**CONCLUSION**

**{30}** We reverse the district court's entries of summary judgment in favor of the Department and against Taxpayers and remand these cases to the district court for further proceedings consistent with this opinion.

**{31}  IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**ZACHARY A. IVES, Judge**