The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>March 28, 2023</u>

**No. A-1-CA-39170**

**ELITE WELL SERVICE, LLC,**

      Protestant-Appellant,

v.

**NEW MEXICO TAXATION &
REVENUE DEPARTMENT,**

      Respondent-Appellee.

**APPEAL FROM THE ADMINISTRATIVE HEARINGS OFFICE
Dee Dee Hoxie, Hearing Officer**

Joe Lennihan
Santa Fe, NM

for Appellant

Raúl Torrez, Attorney General
Kenneth E. Fladager, Special Assistant Attorney General
Santa Fe, NM

for Appellee

**OPINION**

**HANISEE, Judge.**

{1}     Elite Well Services, LLC, (Taxpayer) appeals the decision and order of the Administrative Hearings Office (AHO) in which the AHO (1) granted the New Mexico Taxation and Revenue Department's (the Department) motion for summary judgment, and (2) denied Taxpayer's protest arising from its application for a high-wage jobs tax credit and subsequent application for refund, both of which were denied by the Department. This appeal presents a matter of first impression as to whether, as Taxpayer argues, a taxpayer may elect to dispute the Department's denial of an application for a high-wage jobs tax credit by filing *either* an administrative protest, pursuant to NMSA 1978, Section 7-1-24 (2019), *or* an application for a refund, pursuant to NMSA 1978, Section 7-1-26 (2021).[1] By contrast, the Department contends that Section 7-1-24 is the sole remedy available for taxpayers to dispute the denial of an application for a high-wage jobs tax credit. Concluding that the relevant statutes do not preclude a taxpayer from electing to seek relief under either Section 7-1-24 or Section 7-1-26, we reverse and remand for proceedings consistent with this opinion.

---

[1]While previous versions of these and other relevant statutes were in effect during the proceedings below, this opinion refers to the current versions of each statute given that amendments resulting in the current versions did not substantively affect the applicability of the statutes to the issues raised in the instant case.

**BACKGROUND**

{2}   In December 2016, Taxpayer submitted an application for a high-wage jobs tax credit (credit application), pursuant to NMSA 1978, Section 7-9G-1 (2021), in the amount of $3,287,058.23. The Department denied Taxpayer's credit application in June 2017. In an attachment to the denial letter titled, "FYI-402 TAXPAYER REMEDIES" (FYI-402), the Department instructed that a taxpayer may dispute the Department's denial of a credit application in one of the following two ways: "[(1)] file a written protest with [the Department] without making payment of the protested amount," within ninety days of the Department's denial, "or [(2)] pay the tax liability and then file a refund claim. Please note that [a taxpayer] cannot protest an assessment or partial assessment that [a taxpayer has] already paid. [A taxpayer] must first apply for a refund."

{3}   Taxpayer did not file a written protest to the Department's denial of its credit application within ninety days. Rather, in June 2018, Taxpayer filed an application for refund (refund application), pursuant to Section 7-1-26, in the amount of $3,287,058.23, based on its original credit application. The Department denied Taxpayer's refund application, stating that its claim for refund was denied "because the [c]redit [a]pplication had been previously denied." Thereafter, pursuant to Section 7-1-24, Taxpayer filed a written protest in response to the denial of its refund application, as instructed by Section 7-1-26. Following the Department's receipt of

2

Taxpayer's protest and multiple telephonic hearings before the AHO on various motions, the Department filed its motion for summary judgment.

{4}     The AHO conducted a telephonic hearing on the Department's motion for summary judgment, and subsequently issued the decision and order at issue here. In it, the AHO found that "the appropriate and only available remedy for a denial of an application for a tax credit in this case was to file a protest within [ninety] days of the denial, pursuant to" Section 7-1-24, and that Taxpayer's failure to file such a protest rendered the Department's denial "indisputable." The AHO found that, under Section 7-9G-1, "approval of [a] high-wage jobs tax credit [application] is a condition precedent to claiming the tax credit against one's tax liability." In granting the Department's motion for summary judgment, the AHO found in pertinent part that "claims for refund [under Section 7-1-26] are meant to address how a credit claimed is to be applied toward a tax liability, not to address a taxpayer's underlying eligibility for a tax credit that requires approval prior to being claimed." The AHO further stated that "[i]t is generally true that a taxpayer will claim a credit at the same time that it claims a refund," but found that under Section 7-9G-1, "the taxpayer's right to claim the [high-wage jobs] tax credit is not contemporaneous to and synonymous with the right to claim the refund" because "[t]he high-wage jobs tax credit statute requires that the tax credit be approved prior to being claimed." The AHO made the following conclusions of law: (1) "[t]he right to claim the high-wage

3

jobs tax credit requires that the application for the tax credit be approved by the Department"; (2) "[t]he right to protest a denial of an application for the high-wage jobs tax credit is contained exclusively in Section 7-1-24"; and (3) "[t]he right to claim a refund for the denial of a claimed credit [under Section 7-1-26] does not provide an alternative method to protest the denial of the tax credit application." Defendant appeals.

**DISCUSSION**

{5}    Taxpayer argues that the AHO misinterpreted Sections 7-9G-1, 7-1-24, and 7-1-26, and thus erred in granting the Department's motion for summary judgment and dismissing Taxpayer's protest. Specifically, Taxpayer contends that it is permitted to dispute the Department's denial of its credit application by either one of the two methods provided by Sections 7-1-24 and 7-1-26, respectively. The Department answers that the AHO properly granted summary judgment in its favor, asserting that Taxpayer's sole method for disputing the denial of its credit application would have been through the administrative protest method provided by Section 7-1-24. The Department reasons that in order to "obtain the benefits of" a high-wage jobs tax credit under Section 7-9G-1, "a taxpayer must successfully complete a two-step process. The first step is to *apply* for the high[-]wage job[s] tax credit . . ., and the second step is to *claim* the credit after it has been approved."

{6}      Whether Section 7-1-24 provides the sole remedy for a taxpayer to dispute the Department's denial of a high-wage jobs tax credit is a question requiring statutory interpretation, and we therefore review this matter de novo. *Tucson Elec. Power Co. v. Tax'n & Revenue Dep't*, 2020-NMCA-011, ¶ 6, 456 P.3d 1085. We are not bound by the AHO's interpretation of the relevant statutes, *id.*, and we will set aside the AHO's decision if such decision is: "(1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence in the record; or (3) otherwise not in accordance with the law." NMSA 1978, § 7-1-25(C) (2015). "Even when we review for an abuse of discretion, our review of the application of the law to the facts is conducted de novo. Accordingly, we may characterize as an abuse of discretion a discretionary decision that is premised on a misapprehension of the law." *Helmerich & Payne Int'l Drilling Co. v. N.M. Tax'n & Revenue Dep't*, 2019-NMCA-054, ¶ 17, 448 P.3d 1126 (internal quotation marks and citation omitted).

{7}      "The guiding principle in statutory construction requires that we look to the wording of the statute and attempt to apply the plain meaning rule, recognizing that when a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *Tucson Elec. Power Co.*, 2020-NMCA-011, ¶ 8 (internal quotation marks and citation omitted). "[P]lain language of a statute is the primary indicator of legislative intent." *High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998-NMSC-050, ¶ 5, 126

N.M. 413, 970 P.2d 599 (internal quotation marks and citation omitted). The statute or statutes whose construction is in question are to "be read in connection with other statutes concerning the same subject matter." *Quantum Corp. v. N.M. Tax'n & Revenue Dep't*, 1998-NMCA-050, ¶ 8, 125 N.M. 49, 956 P.2d 848. "[W]e will not read into a statute language which is not there." *Am. Fed'n of State, Cnty. & Mun. Emps. v. City of Albuquerque*, 2013-NMCA-063, ¶ 5, 304 P.3d 443 (omission, internal quotation marks, and citation omitted).

{8}     Under NMSA 1978, Section 7-1-23 (2019), titled, "Disputing liabilities; election of remedies:"

> A taxpayer may dispute the taxpayer's liability for taxes only by [(1)] protesting the assessment of taxes as provided in Section 7-1-24 . . . without making payment or [(2)] by claiming a refund as provided in Section 7-1-26 . . . after making payment of the taxes the department asserts are owed. The pursuit of one of the two remedies constitutes an unconditional waiver of the right to pursue the other.

Section 7-1-24, titled, "Disputing liabilities; administrative protest," provides that a taxpayer may file a written protest to dispute:

> (1)     the assessment to the taxpayer of any amount of tax;
>
> (2)     the application to the taxpayer of any provision of the Tax Administration Act except the issuance of a subpoena or summons; or
>
> (3)     the denial of or failure either to allow or to deny a:
>
> (a) credit or rebate; or
>
> (b) claim for refund made in accordance with Section 7-1-26.

Section 7-1-24(F) states:

> If a taxpayer fails to timely protest an assessment of tax, penalty or interest: (1) the undisputed amount of tax assessed and not protested becomes final; and (2) the taxpayer is deemed to have waived the right to protest the assessment, unless the taxpayer pays the tax and claims a refund of the tax pursuant to Section 7-1-26.

{9}     Section 7-1-26(A), titled, "Disputing liabilities; claim for credit, rebate or refund," provides:

> A person who believes that an amount of tax has been paid by or withheld from that person in excess of that for which the person was liable, *who has been denied a credit* or rebate claimed . . . may claim a refund by directing to the secretary, within the [applicable] time limitations . . ., a written claim for refund.

(Emphasis added.) Under Sections 7-1-26(D), (E)(1), if the claim for refund is denied, "the person shall not refile the denied claim, but the person, within ninety days after either the mailing or delivery of the denial of all or any part of the claim, may elect to pursue" one of three remedies, including filing a written protest "pursuant to the provisions of Section 7-1-24." Such a written protest must set forth, in pertinent part, "the circumstances of . . . a denied credit." Section 7-1-26(E)(1)(a).

{10}     Under Section 7-9G-1, titled, "High-wage jobs tax credit; qualifying high-wage jobs," "[a] taxpayer that is an eligible employer may apply for, and the department may allow, a tax credit for each new high-wage job." Section 7-9G-1(A). "The Legislature enacted Section 7-9G-1 to provide an incentive for urban and rural businesses to create and fill new high-wage jobs in New Mexico." *Weatherford*

7

*Artificial Lift Sys., LLC v. Clarke*, 2021-NMCA-065, ¶ 4, 499 P.3d 679 (internal quotation marks and citation omitted). Section 7-9G-1(C) provides that "[t]he high-wage jobs tax credit may be claimed by an eligible employer for each new high-wage job performed for the year in which the new high-wage job is created and for consecutive qualifying periods." Under Section 7-9G-1(D), "[t]o receive a high-wage jobs tax credit, a taxpayer shall file an application for approval of the credit with the department once per calendar year on forms and in the manner prescribed by the department." Section 7-9G-1(M) provides that "an approved high-wage jobs tax credit shall be claimed against the taxpayer's modified combined tax liability and shall be filed with the return due immediately following the date of the credit approval."

{11}     As referenced above, the AHO found that under Section 7-9G-1, a "[t]axpayer's right to claim [a high-wage jobs tax credit] is not contemporaneous to and synonymous with the right to claim the refund," and that "[t]he right to claim the high-wage jobs tax credit is afforded by statute, and the credit may only be claimed once the application for credit is approved by the Department." The AHO further found that "[t]he high-wage jobs tax credit statute requires that the tax credit be approved prior to being claimed."

{12}     We disagree with these findings by the AHO insomuch as Section 7-9G-1 is wholly silent regarding the applicability of Section 7-1-24, Section 7-1-26, or any

8

other specific progression or procedure a taxpayer must follow when disputing the Department's denial of a high-wage jobs tax credit. Moreover, while Section 7-9G-1(M) specifically refers to "an approved high-wage jobs tax credit" and "credit approval," it does not provide that a taxpayer is precluded from seeking any particular remedy to dispute a denial of such credit. We further disagree with the AHO's interpretation of Sections 7-1-24 and 7-1-26, based on the plain language of each, and explain as follows.

{13} Here, the Department asserts that Sections 7-9G-1, 7-1-24, and 7-1-26 set forth a clear and structured procedure that a taxpayer must follow to dispute the Department's actions. The Department contends that Section 7-1-26 provides the process by which a taxpayer may pursue the Department's asserted two-step process, wherein a taxpayer must first apply for the high-wage jobs tax credit and may only "claim" the credit following the Department's approval of the credit application. The Department specifies—without citation to authority—"that the fact a credit has been approved by the Department does not necessarily mean that a taxpayer will be successful in claiming the approved credit," asserting such as proof that the Legislature did not intend Section 7-1-26 to function as a method to dispute the denial of a tax credit application. "It is not our practice to rely on assertions of counsel unaccompanied by support in the record. The mere assertions and arguments of counsel are not evidence." *Chan v. Montoya*, 2011-NMCA-072, ¶ 9, 150 N.M.

9

44, 256 P.3d 987 (internal quotation marks and citation omitted). Further, the Department argues that "[b]y its plain meaning, Section 7-1-26 prescribes the remedy to those taxpayers who were denied a credit they were *claiming*. It offers no remedy to taxpayers whose credit *application* was denied." The Department contends, as the AHO found, that Section 7-1-24 is the sole remedy available for taxpayers to dispute the denial of an application for a tax credit, and that Section 7-1-26 is the remedy available for taxpayers to claim an already approved tax credit. Under the Department's interpretation of the relevant statutes, because Taxpayer failed to file an administrative protest under Section 7-1-24 within ninety days of the Department's denial of the credit application, Taxpayer is without recourse to challenge the Department's adverse decisions.

{14} While certainly what the Department advances, and the AHO found, is one approach in construing the relevant statutes, under the tenets of statutory construction we conclude that the statutes do not reflect in their plain language the Department's approach. Rather, as stated above, Section 7-9G-1 is silent regarding the methods by which a taxpayer should dispute a denial of their application for a high-wage jobs tax credit. Further, the plain language of both Sections 7-1-24 and 7-1-26 indicate that the two statutes exist as alternatives and a taxpayer may dispute a denial of a tax credit under either statute. *See* § 7-1-24(A)(3)(a) ("A taxpayer may dispute . . . the denial of . . . a credit *or* rebate." (emphasis added)); § 7-1-26(A) ("A

10

person . . . who has been denied a credit . . . may claim a refund."); *see also High Ridge Hinkle Joint Venture*, 1998-NMSC-050, ¶ 5 ("[P]lain language of a statute is the primary indicator of legislative intent."). "As a rule of construction, the word 'or' should be given its normal disjunctive meaning unless the context of a statute demands otherwise." *Bounds v. Hamlett*, 2011-NMCA-078, ¶ 15, 150 N.M. 389, 258 P.3d 1181 (internal quotation marks and citation omitted).

{15}     While New Mexico appellate courts have not previously addressed the specific issues raised in this appeal, we have addressed the function of both Sections 7-1-24 and 7-1-26 and our reading thereof has likewise confirmed that relief may be sought through either statute. In *Weatherford*, this Court addressed "the exhaustion requirements for a taxpayer who [sought] to challenge the [d]epartment's denial of successive applications for [high-wage jobs] tax credits." 2021-NMCA-065, ¶ 2. There, we stated that "[g]enerally speaking, a taxpayer who is dissatisfied with the [d]epartment's denial of a tax credit may pursue one of two remedies under the Tax Administration Act—an administrative protest [under Section 7-1-24] or a claim for refund [under Section 7-1-26]—and must exhaust the chosen remedy." *Id.* The AHO's decision and order in the instant case loosely reflects this principle—despite ultimately finding to the contrary—stating that "[a] taxpayer generally has two available administrative remedies, to file a protest or to file a claim for refund."

11

{16} New Mexico appellate courts typically give "persuasive weight to long-standing administrative constructions of statutes by the agency charged with administering them." *High Ridge Hinkle Joint Venture*, 1998-NMSC-050, ¶ 5 (internal quotation marks and citation omitted). "Agency regulations that interpret statutes and are promulgated under statutory authority are presumed proper, and, of course, it is hornbook law that an interpretation of a statute by the agency charged with its administration is to be given substantial weight." *Chevron U.S.A., Inc. v. N.M. Tax'n & Rev. Dep't*, 2006-NMCA-050, ¶ 16, 139 N.M. 498, 134 P.3d 785 (alteration, internal quotation marks, and citation omitted). Here, though, we cannot disregard the Department's own guidance found in FYI-402, which is submitted by the Department to taxpayers upon denial of an application for tax credit. The stated purpose of FYI-402 is to explain to a taxpayer "how to dispute a tax liability or other administrative action" by the Department.

{17} While FYI-402 does not explicitly refer to either Section 7-1-24 or Section 7-1-26, the language in the form mirrors those statutes. FYI-402 provides that a taxpayer "may dispute a tax liability or certain actions the [D]epartment might take against [a taxpayer] . . . in one of two ways: [(1)] file a written protest . . . without making payment of the protested amount, or [(2)] pay the tax liability and then file a refund claim." Regarding the first option of filing a protest, FYI-402 states that "[i]f [a taxpayer] choose[s] to protest, [the taxpayer] must do so in writing within

[ninety] days of the date of the event you are protesting," and explains the process by which the Department will review such filed protest, as well as the rights to appeal to this Court. As to the second option of claiming a refund, FYI-402 provides that "[i]f [a taxpayer] believes any tax [the taxpayer has] paid or had withheld" is more than is actually owed, that taxpayer "may file a refund claim" with the Department, and "[t]he Department treats a protest of a denial or departmental action on a complete claim for refund in the same way as a protest of an assessment." FYI-402 further explains that a taxpayer "may file a protest with the Department or file a lawsuit" in district court if a claim for refund is denied. The Department's letter denying Taxpayer's credit application directs Taxpayer to refer to FYI-402 for details regarding "procedures to protest the denial of the credit," and FYI-402 draws no distinction between available dispute methods. Indeed, FYI-402 does not state, or even imply, that a taxpayer may only dispute an application for credit by filing a protest. Rather, the form unequivocally presents the options of "protest" and "refund claim" as equally available to taxpayers, bounded only by applicable time limitations, whether the taxpayer has already paid or is willing to pay the amount in question, and the requirement that "choosing one remedy is an automatic waiver of the right to pursue the other." Put more simply, FYI-402's guidance to Taxpayer in this instance would be misleading if one of the options presented to challenge the denial of its credit application is in fact not an option.

{18} To summarize, neither the applicable statutes nor the Department's own guidance suggest that a taxpayer's sole remedy to dispute the denial of a high-wage jobs tax credit is through the protest procedure provided in Section 7-1-24. "The Legislature knows how to include language in a statute if it so desires." *Cordova v. Cline*, 2021-NMCA-022, ¶ 9, 489 P.3d 957 (alteration, internal quotation marks, and citation omitted). Had the Legislature intended for taxpayers to dispute a denial of a high-wage jobs tax credit *only* through Section 7-1-24, the Legislature would have made as much clear in its writing and subsequent amendments of Sections 7-9G-1, 7-1-23, 7-1-24, or 7-1-26. As written, however, the Legislature has not included any language in the relevant statutes that could indicate an intended limitation as to how a taxpayer may dispute the denial of a high-wage jobs tax credit. The plain language of the statutes, as well as the record before us, is devoid of any indication to that effect. *See Britton v. Off. of the Att'y Gen.*, 2019-NMCA-002, ¶ 28, 433 P.3d 320 ("[A]ppellate courts will not read into a statute language which is not there." (alteration, internal quotation marks, and citation omitted)).

{19} To the extent that the Department contends that Taxpayer's interpretation of the relevant statutes would result in impermissible ambiguities and surplusage, we do not agree. We will not interpret a statute to create an exception not reflected in the plain language. *See id.*; *Quynh Truong v. Allstate Ins. Co.*, 2010-NMSC-009, ¶ 31, 147 N.M. 583, 227 P.3d 73. It is only where "the literal meaning of a statute

14

would be absurd, unreasonable, or otherwise inappropriate in application" that "we go beyond the mere text of the statute." *Bishop v. Evangelical Good Samaritan Soc'y*, 2009-NMSC-036, ¶ 11, 146 N.M. 473, 212 P.3d 361. We do not consider it to be absurd, unreasonable, or otherwise inappropriate that a taxpayer may seek one of two alternative remedies to dispute a denied credit application.

{20}    We conclude that the AHO's interpretation of the relevant statutes does not comport with our principles of statutory construction. Therefore, we hold that the AHO's decision and order is not in accordance with the law and thus requires reversal under Section 7-1-25(C). Our holding in this regard is wholly unrelated to the substantive determinations made by the Department in denying Taxpayer's claim and shall not be construed as an indication that Taxpayer should or should not be approved for the high-wage jobs tax credit for which it originally applied. Further, our holding shall not be read as casting any judgment on the hypothetical practicality of the Department's interpretation of the relevant statutes, should the Legislature choose to amend the statutes accordingly. Until such legislative action occurs, however, we are beholden to interpret the plain language of the statutes as written.

**CONCLUSION**

{21}    For the foregoing reasons, we reverse the AHO's grant of the Department's motion for summary judgment and denial of Taxpayer's protest, and remand for proceedings consistent with this opinion.

15

{22}    **IT IS SO ORDERED.**

_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**

_____
**JACQUELINE R. MEDINA, Judge**

_____
**JANE B. YOHALEM, Judge**

16