**WESTERN NATIONAL BANK, Appellant,**

v.

**Christine RIVES, Appellee.**

No. 07–95–0297–CV.

Court of Appeals of Texas, Amarillo.

July 15, 1996.

Rehearing Overruled Aug. 16, 1996.

Conant, Whittenburg, Whittenburg & Schacter, George Whittenburg, Cary Schacter, Vikram Chandhok, Amarillo, for appellant.

Gibson, Ochsner & Adkins, L.L.P., John Huffaker, Michael G. Smith, Amarillo, for appellee.

Before DODSON and QUINN, JJ., and REYNOLDS, Senior Justice.*

QUINN, Justice.

### Prologue

■ By our own motion, we withdraw the opinion issued and judgment entered by this court on May 23, 1996, as well as our opinion on motion for rehearing.[1] The following is substituted in their stead.

### Opinion

Western National Bank (WNB) appeals from a final summary judgment entered in favor of Christine Rives (Christine).[2]

---

* Charles L. Reynolds, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. § 75.002(a)(1) (Vernon Supp. 1996).

1. A court of appeals retains plenary jurisdiction over its judgments until the end of the term in which the decree was rendered or until the exclusive jurisdiction of the Supreme Court attaches via an application for writ of error. *Stroud v. VBFSB Holding Corp.*, 917 S.W.2d 75, 78 (Tex.App.—San Antonio 1996, writ denied). Since no one as yet applied for a writ of error and since the calendar year in which we issued our prior judgment has not ended, *see Tex.Gov. Code Ann.* 22.218 (Vernon 1988) (stating that the court's term ends with each calendar year), we continue to have plenary jurisdiction over the cause. Given this, we may set-aside our prior judgments *sua sponte. See Lorino v. Crawford Packing Co.*, 169 S.W.2d 235, 240 (Tex.Civ. App.—Galveston 1943) *affirmed*, 142 Tex. 51, 175 S.W.2d 410 (1943) (noting that the court may set-aside prior judgments on its own motion).

2. Originally, WNB sued Dick Harris as independent executor of the estate of W.W. Rives. However, before the partial judgment became final, the court ordered that "Mrs. Christine Rives ... be substituted ... as Defendant in lieu of the

Through two points of error, WNB contends that the trial court erred in denying its motion for summary judgment and in granting that of its opponent. We disagree, overrule the points, and affirm.

### Summary Judgment Evidence

The judgment arose from an action to collect upon a negotiable promissory note. The latter was originally issued by Henry A. Hickman (Hickman) on July 22, 1985, and made payable to the order of W.W. Rives (Rives). Having a face amount of $150,000, it matured, by its own terms, on July 22, 1988, though "interest [was] to begin accruing on July 22, 1987." [3]  Furthermore, a vendor's lien upon realty located in Irving, Texas, secured its payment.

As the note's maturity date approached, Hickman requested a loan from WNB to pay Rives the sum becoming due. The Bank acquiesced. Thus, on August 11, 1988, Hickman executed, in favor of WNB, a second instrument renewing and extending the 1985 note.[4]  In turn, the Bank paid Rives $150,000 and obtained from him a document entitled "Transfer of Lien." The latter purported to transfer, assign, grant and convey to WNB the 1985 note "together with all liens."

Eventually, Hickman defaulted in payment of the 1988 note. Apparently believing its chances for recovery against Hickman *de minimis,* the Bank sued Rives as an indorser of the 1985 note. *See Tex.Bus. & Com.Code Ann.* 3.414(a) (Vernon 1994) (discussing the liability of an unqualified indorser).[5]  The problem was, however, that it could not find the instrument, and this prevented WNB from showing that Rives indorsed it.

Undaunted, WNB turned to § 3.804 of the Texas Business and Commerce Code.[6]  That

provision created an avenue by which an owner of a lost instrument could still recover from "any party liable thereon." *Tex.Bus. & Com.Code Ann.* § 3.804 (Vernon 1994). Yet, the Bank recognized that its predicament remained unsolved for it knew that only those whose signature appeared on the instrument could be considered liable thereon. *Id.* at § 3.401(a). Thus, now it had to find a way to obtain Rives' signature. That situation too was soon resolved, in its view. It believed that it could use § 3.201(c) of the same Code to compel him, or his representative, to sign the instrument.

With its strategy in hand, WNB drafted and filed a petition describing the various transactions leading up to the "Transfer of Lien" executed by Rives.[7]  Then it alleged that "[a]s a result of the transfer and assignment, ... [it was] the owner of the Note and lien." In the next paragraph, it represented that "[t]he note [was] lost" but that it brought "its claims ... pursuant to Section 3.804 of the Texas Business and Commerce Code."

The subsequent paragraph mentioned § 3.201. Therein, it was alleged that the provision "entitle[d] the Bank to the unqualified indorsement of Rives" because "[a]s of the filing of th[e] suit, neither Rives nor the executor of his estate ha[d] indorsed" the instrument. Once issue was joined, the Bank moved for summary judgment. Rives responded with one of her own, asserting a number of arguments including one founded upon the need for the Bank to possess the 1985 Note.

In addition to the foregoing, the record illustrated that Caron Heisler, WNB's credit manager since "early 1988," had "never seen the 1985 note in the Bank's files, and [that] it

Estate of W.W. Rives." Thus, for ease, we refer to Ms. Rives when using the name Rives.

3. For the sake of clarity, we refer to the July 22, 1985 obligation as the 1985 note.

4. We refer to the second instrument as the 1988 note.

5. No one claims that Rives signed the renewal or extension note, and his signature does not appear on it.

6. The 74th Legislature rearranged section three of the Texas Business and Commerce Code and amended various of its provisions in 1995. Yet, the claims of WNB accrued prior to the effective date of the changes, that is, January 1, 1996. Thus, the Code provisions as they existed prior to January 1, 1996, generally control the outcome of this appeal.

7. We quote from WNB's First Amended Original Petition since that was its live pleading.

... [was] not in the Bank's possession." Ms. Heisler added that her employer had no evidence indicating that the Bank ever received the note from Rives, that Rives ever indorsed it, or that any explanation for its absence existed.[8]

So too was it revealed that the title company which closed the August 1988 loan for WNB knew not the location of the 1985 note. Its representative stated 1) that had the item been present at the closing, the file would contain a copy of it, 2) that a copy was *not* in the official file, 3) that Rives simply picked up his check and signed the "Transfer of Lien," 4) that she could not recall being instructed to obtain the note from Rives or to secure his indorsement on same, and 5) that she had no evidence indicating that the note was ever present at closing, or indorsed by Rives, or delivered to the Bank, though the "Transfer of Lien" was eventually delivered.

Also contained in the record was the affidavit of Larry Lewis, WNB president in August of 1988. He attested that he had no discussions with Rives regarding any agreement to avoid or minimize Rives' potential liability as indorser. Furthermore, according to Lewis, the banking practices then prevalent in Amarillo dictated that anyone assigning a promissory note and wishing to reduce his exposure would have routinely expressed such an intent on the transfer document, and if no expression appeared, then the transfer was with full recourse against the transferor.

### The Law as Per the Texas Business & Commerce Code

Should the owner of a negotiable note lose the instrument, all is not lost. He may still recover "from any party liable thereon" by proving his ownership of the item, the facts which prevent its production, and the terms of the instrument. *Tex.Bus. & Com.Code Ann.* 3.804. For someone to be considered a party liable thereon, however, it must be shown that he signed the note. *See Tex.Bus. & Com.Code Ann.* 3.401(a) (stating that only those who sign the note are responsible for its payment). Moreover, § 3.201(c) of the

Business and Commerce Code provides a way for a "transferee" of an instrument to obtain that signature from a "transferor." The method supplied by the State Legislature, nevertheless, contains several obstacles. These obstacles include proof that the note involved is negotiable, that it was acquired via a transfer for value, that it is not payable to bearer or indorsed in blank, and that no agreements limiting the indorser's liability exist. *See Tex.Bus. & Com.Code Ann.* 3.201(c) (referring to the item as an "instrument"); *Tex.Bus. & Com.Code. Ann.* 3.102(a)(5) (defining "instrument" as a "negotiable instrument.") If these conditions are met, then the transferee gains the "specifically enforceable right to have the unqualified indorsement of the transferor." *Id.*

WNB invoked 3.201(c) to secure the "unqualified indorsement" of Rives and hold the latter responsible for its payment. *See Tex. Bus. & Com.Code Ann.* 3.414(a) (describing the obligation of an unqualified indorser). Rives replied by contending that the Bank had to first possess the note before it could secure her indorsement under the section.

### Possession and 3.201(c)

█ At first blush one could easily assume that possession of the instrument has little to do with securing an indorsement under § 3.201(c) of the Business Code. Indeed, the measure says nothing of the matter. Yet, in construing a statute, we must strive to not only "ascertain the legislative intent" underlying it, *Tex.Gov.Code Ann.* 312.005 (Vernon 1988), but also effectuate that intent, if possible. So, we are faced with determining what was intended when the legislature enacted § 3.201(c). Simply put, did that body implicitly require that the party attempting to secure an unqualified indorsement possess the note?

In answering the question, we first turn to the comments following the provision for they help capture the provision's meaning. And, upon doing so, we come upon comment 8. The latter explains that one seeking an indorsement is neither a holder of the instru-

---

**8.** The record discloses that WNB attached a copy of the note to its original petition. However, the credit manager did not know from where or whom the copy was obtained.

ment nor entitled to the presumptions accorded a holder; therefore, "he must account for his *possession* of the unindorsed paper by proving the transaction through which he acquired it." *Tex.Bus. & Com.Code Ann.* § 3.201 (comment 8) (emphasis added). Using the word "possession" is some indication that the legislature addressed the matter at issue and presupposed that the individual invoking § 3.201(c) would actually be someone possessing the instrument.[9] This supposition is confirmed when we also consider the category of people to whom the indorser is liable.[10] To do that, we turn to § 3.414 of the Texas Business and Commerce Code. *Tex.Bus. & Com.Code Ann.* § 3.414 (Vernon 1994).

█ According to subsection (a) of 3.414, an indorser is responsible to the note's holder and to subsequent indorsers "who take[ ] [the note] up." *Tex.Bus. & Com.Code Ann.* 3.414(a). Conceptually, if there are no *subsequent* indorsers (as the situation is here), the sole indorser is liable only to the holder, and, the holder can be none other than the person who, among other things, *possesses* the note. *Id.* at 1.201(20). If the claimant does not possess the note, then he is not a holder. *See Haupt v. Coldwell,* 500 S.W.2d 563, 565 (Tex.Civ.App.—El Paso 1973, no writ) (stating that one who lacks possession cannot be a holder). If he is not a holder, then he cannot enforce the obligation under § 3.414(a).

Yet, our task in not over. We cannot ignore § 3.804. Again, that provision comes into play when the note is lost or destroyed. Because it constitutes part of the overall Code, it too must be addressed. More importantly, its existence signifies legislative belief that under certain circumstances, possession of the note is not crucial. But, the

type of possession, or lack thereof, contemplated by the provision is much more limited than that involved here. According to the opinions of a sister court and at least one notable commentator, the provision simply excuses present possession, not all possession. That is, it "presupposes" delivery to and possession by the claimant before the instrument is lost. 6A R. Anderson, *Uniform Commercial Code,* § 3–804:6 (3d 1993); *Billingsley v. Kelly,* 261 Md. 116, 274 A.2d 113, 119 (1971) (and cases cited therein).

█ Though no prior Texas court has agreed or disagreed with this interpretation of § 3.804, it, nevertheless, appears that the legislature adopted it. In recodifying the provision under § 3.309 of the amended Code, that body declared that "a person who *is not in possession* of an instrument is entitled to enforce" it if he "*was in possession* ... and entitled to enforce it when loss ... occurred." *Tex.Bus. & Com.Code Ann.* § 3.309(a)(1) (Vernon Supp.1996) (emphasis added). Given this, the decisions of neighboring jurisdictions as expressed in *Billingsley,* and the statutory directive that uniform acts be construed to make uniform the law of those states that enact it, *Tex.Gov.Code Ann.* § 311.028 (Vernon 1988), we also read § 3.804 to require possession by the claimant prior to loss or destruction.

Thus, in comparing and construing the pertinent sections of the Business and Commerce Code, we find a thread common to each which involves possession. From this, we conclude that the legislature intended that those claiming under § 3.201(c) either have possession of the note if same is not lost or show that it had possession at one time if it is lost.

---

9. The legislature made this clear in its 1995 amendments to the section. The successor to § 3.201 expressly states that an instrument is "transferred when it is *delivered* ... for the purpose of giving to the person *receiving delivery* the right to enforce the instrument." *Tex.Bus. & Com.Code Ann.* § 3.203(a) (Vernon Supp.1996) (emphasis added). The terms "delivered" and "receiving delivery" depict an exchange or transfer of possession from one to another. *Id.* comment 1. Thus, the one who has the "specifically enforceable right to the unqualified indorsement of the transferor," *id.* at 3.203(c), is the one who

received *possession* of the instrument from the person who delivered *possession*.

10. Indeed, it is only logical to make such a comparison since statutes may not be construed in a vacuum, *see Morrison v. Chan,* 699 S.W.2d 205, 208 (Tex.1985) (demanding that we look to the statute as a whole when construing it), and § 3.201(c) serves as a vehicle to secure and enforce an indorser's obligations created under § 3.414(a) of the Texas Business and Commerce Code.

### Bank's Rebuttal

The various authorities relied upon by WNB do not impugn our decision. Neither *Corbell v. Stengel*, 83 S.W.2d 1084 (Tex.Civ. App.—San Antonio 1935, no writ) nor *Osburn v. Smart*, 58 S.W.2d 1073 (Tex.Civ. App.—Fort Worth 1932, writ dism'd) involve a lost note. So, their holdings can hardly be influential, much less controlling, upon the situation at bar.

Nor do we find *Pancoast v. Century Homes, Inc.*, 8 U.C.C. Rep. Serv. 1289, 1971 WL 17869 (Okla.App.1971) particularly persuasive. The case may have involved a lost note, but the arguments asserted therein did not encompass the issue at bar. No one questioned, as did Rives, whether the claimant had to possess the note before the indorser could be held liable. Simply put, the court never addressed the matter.

Moreover, the factual recitations in both *Guaranty Bank & Trust Co. v. Dowling*, 4 Conn.App. 376, 494 A.2d 1216 (1985) and *American Cement Corp. v. Century Transit Mix, Inc.*, 3 U.C.C. Rep. Serv. 424, 1966 WL 8946 (N.Y.Sup.Ct.1966) disclosed that the respective claimants actually possessed the notes before they were eventually lost. And, *Dunn v. Willis*, 599 So.2d 271 (Fla.Dist.Ct. App.1992) does not involve a claim against an indorser or purported indorser, unlike the circumstances at bar.

Finally, we see little merit in the Bank's arguments encompassing the 1995 amendments to the Code. Admittedly, the successor to § 3.414, that is, § 3.415, describes the class of people to whom an indorser is liable as the "person entitled to enforce the instrument" and the subsequent indorsers who paid it. *Tex.Bus. & Com.Code Ann.* § 3.415(a) (Vernon Supp.1996).[11] Nevertheless, those "person[s] entitled to enforce," are restricted to 1) "the holder of the instru-

ment," 2) "a non-holder in possession ... who has the rights of a holder," and 3) "a person not in possession ... [but] who is entitled to enforce the instrument pursuant to Section 3.309 or 3.418(d)." *Tex.Bus. & Com.Code Ann.* § 3.301 (Vernon Supp.1996). As to the first group, "holders" must still have possession of the note. *Id.* at 1.201(20). As to the second, and as the phrase itself signifies, those having possession must have possession. Lastly, person's entitled to enforce the note under § 3.309, as previously developed, are those who were "*in possession*" of the note before they lost or destroyed it. *Id.* at § 3.309(a)(1) (emphasis added).[12] Thus, even under the amended Code, one seeking to recover against an indorser must prove either that he possessed the note, had possession at one time, or paid the item as a subsequent indorser.

### Application to Summary Judgment Evidence

■ Here, the summary judgment evidence as well as WNB's own pleadings revealed that the note was lost. *See Judwin Prop., Inc. v. Griggs & Harrison*, 911 S.W.2d 498, 504 (Tex.App.—Houston [1st Dist.] 1995, no writ) (holding that pleadings may be probative summary judgment evidence if containing admissions adverse to the pleader). The evidence also indisputably illustrated that the Bank failed to obtain possession of the item before it was lost. Given the absence of both present and prior possession, WNB could not satisfy the criteria of § 3.201(c), and the trial court appropriately entered summary judgment against the Bank.[13]

Accordingly, we affirm the judgment entered below.

---

11. So too does comment one to the new provision state that "[s]ubsections (a) and (b) restate the substance of former Section 3–414(1)." *Tex. Bus. & Com.Code Ann.* § 3.415, comment one (Vernon Supp.1996). And, to that extent, we agree with the Bank's proposition that the new statute can be used in interpreting the parameters of the old § 3.414(a).

12. So too may someone who paid a note by mistake fall within the category. *Tex.Bus. & Com.Code Ann.* §§ 3.301 & 3.418(d) (Vernon Supp.1996). But that issue is not involved here.

13. Given that the issue of possession is dispositive, we need not address whether the various other grounds asserted by Rives in her motion for summary judgment also support the court's action.