The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: July 20, 2022

**No. A-1-CA-38418**

**CITIMORTGAGE, INC.,**

>      Plaintiff-Appellant/Counterdefendant/
>      Cross-Appellee,

v.

**LORRAINE GARCIA, as Personal Representative of the ESTATE OF ROSE GOMEZ,**

>      Defendant-Appellee/Counterplaintiff/
>      Cross-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Carl J. Butkus, District Judge**

Rose L. Brand & Associates, P.C.
Eraina M. Edwards
Albuquerque, NM

for Appellant

Kalm Law Firm, P.C.
C. James Kalm
Thomas L. Kalm
Albuquerque, NM

for Appellee

**OPINION**

**IVES, Judge.**

{1}     In this foreclosure case, Plaintiff CitiMortgage, Inc., appeals from an order in which the district court concluded that Plaintiff lacked standing because the promissory note secured by the mortgage was lost while it was not in Plaintiff's possession. On appeal, we consider an issue of first impression: whether the assignee of a lost negotiable instrument to which Article 3 of New Mexico's Uniform Commercial Code (NMUCC) applies, *see generally* NMSA 1978, § 55-3-102 (1992), may obtain the right to enforce that instrument under NMSA 1978, Section 55-3-309 (1992) by virtue of the assignment. Concluding that the NMUCC's provisions do not displace the general rule that an assignee stands in the assignor's shoes, we hold that the assignment of a lost instrument carries with it the right to enforce because that interpretation of Section 55-3-309 furthers the policies and purposes underlying the NMUCC. To ensure that the vital limitations on the right to enforce a lost instrument contained in Section 55-3-309(b) serve their intended purpose of protecting persons required to pay, we also hold that, when a district court enters judgment in favor of a party seeking to enforce a lost note, the court must make the finding required by Section 55-3-309(b)—that the "person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument"—explicitly and must explain

why its chosen means afford adequate protection in a reasonable manner under the circumstances.

**BACKGROUND**

{2} In 2016, CitiFinancial Servicing, LLC (CitiFinancial) filed an in rem complaint for foreclosure of a mortgage securing a promissory note executed by Rose Gomez, who had passed away before the initiation of suit, and whose estate is represented by Defendant Lorraine Garcia. Because the note had allegedly been lost, CitiFinancial based its claim for foreclosure on Section 55-3-309, which allows parties to enforce lost instruments under certain circumstances. CitiFinancial eventually filed an unopposed motion to substitute CitiMortgage, LLC as plaintiff pursuant to Rule 1-025(C) NMRA, asserting that CitiFinancial had transferred the right to enforce the note at issue to Plaintiff during the course of the litigation.

{3} After the district court granted the motion to substitute, Defendant moved for summary judgment, contending that she had established an affirmative defense to enforcement of the note—and thus to foreclosure of the mortgage—because it was undisputed that the note was lost and that Plaintiff did not have the rights of a holder in due course. To support this position, Defendant relied on the last sentence of NMSA 1978, Section 55-3-305(c) (2009), which provides that "[a]n obligor is not obliged to pay [a negotiable] instrument if the person seeking enforcement of the instrument does not have rights of a holder in due course and the obligor proves that

2

the instrument is a lost or stolen instrument." Defendant's argument was that a person can never be required to pay a lost instrument if the person who lost the instrument does not have the rights of a holder in due course.

{4} The district court rejected that argument, but nevertheless entered summary judgment in Defendant's favor. Applying what it considered to be the plain meaning of Section 55-3-309, the district court concluded that Plaintiff lacked standing to enforce the note because Plaintiff had not been "in possession of the instrument and entitled to enforce it when loss of possession occurred." Section 55-3-309(a). Plaintiff filed a notice of appeal from the order granting summary judgment, and Defendant cross-appealed on the Section 55-3-305(c) issue.

**DISCUSSION**

**I. The Assignment of a Lost Instrument Carries With It the Right to Enforce**

{5} New Mexico's standing doctrine requires a plaintiff seeking to foreclose a mortgage that secures a promissory note to demonstrate that it had the right to enforce the note at the time suit was filed. *HSBC Bank USA v. Wiles*, 2020-NMCA-035, ¶ 9, 468 P.3d 922. Where that note is a negotiable instrument subject to Article 3 of the NMUCC, as the note at issue here undisputedly is, our courts look to NMSA 1978, Section 55-3-301 (1992) to determine whether the plaintiff has the right to enforce the note. *Deutsche Bank Nat'l Tr. Co. v. Johnston*, 2016-NMSC-013, ¶ 14, 369 P.3d 1046. In pertinent part, that statute defines a "'[p]erson entitled to enforce'"

3

an instrument as "a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 55-3-309." Section 55-3-309, in turn, sets out the circumstances under which a person is entitled to enforce a lost, stolen, or destroyed instrument and the conditions for exercising that entitlement:

> (a) A person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

> (b) A person seeking enforcement of an instrument under Subsection (a) must prove the terms of the instrument and the person's right to enforce the instrument. . . . The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument. Adequate protection may be provided by any reasonable means.

The question presented here is whether the assignment of a lost instrument[1] carries with it the right to enforce the instrument under Section 55-3-309 if the assignor had that right.

---

[1]Throughout this opinion, we use the term "lost instrument" as a shorthand for an instrument that has been "destroyed," an instrument with "whereabouts [that] cannot be determined," or an instrument that "is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process." Section 55-3-309(a).

4

{6}     Section 55-3-309 is modeled on the version of Section 3-309 of the Uniform Commercial Code (UCC), a provision that was adopted as part of the 1990 amendments to the UCC. *See generally* U.C.C. § 3-309 (Am. Law Inst. & Unif. Law Comm'n 1990, amended 2002).[2] We are far from the first court called upon to decide whether this uniform provision permits the post-loss assignee of a negotiable instrument to enforce it, but those that have gone before are divided. Beginning, apparently, with *Dennis Joslin Co. v. Robinson Broadcasting Corp.*, 977 F. Supp. 491 (D.D.C. 1997), courts in one line of cases hold that the plain language of UCC Section 3-309 gives enforcement rights only to the person who had possession of the instrument at the time of loss. *See Dennis Joslin Co.*, 977 F. Supp. at 495 (explaining that "the plain language of the provision mandates that the plaintiff suing on the note must . . . have been both in possession of the note when it was lost and entitled to enforce the note when it was lost" (emphasis omitted)); *accord, e.g.*, *Emerald Portfolio, LLC v. Outer Banks/Kinnakeet Assocs., LLC*, 790 S.E.2d 721, 725 (N.C. Ct. App. 2016); *Seven Oaks Enters., L.P. v. Devito*, 198 A.3d 88, 99 (Conn. App. Ct. 2018); *SMS Fin. XXV, LLC v. Corsetti*, 186 A.3d 1060, 1066 (R.I. 2018). Under this line of cases, an assignee cannot enforce the lost note because they did not have possession of the note at the time it was lost.

---

[2]All mentions of and citations to UCC 3-309 are to the 1990 version of the UCC, unless the context indicates otherwise.

{7}     In contrast, the courts that have concluded that the assignee of a lost note may enforce it generally reason that the language of UCC Section 3-309 says nothing one way or the other about an assignee's right to enforce a promissory note lost by the assignor before assignment. *See, e.g.*, *Invs. Bank v. Torres*, 233 A.3d 424, 436-37 (N.J. 2020) ("The New Jersey version of UCC [S]ection 3-309 . . . is silent regarding the rights of an assignee of a mortgage and the transferee of a note when the original note executed by the mortgagor has been lost."); *Atl. Nat'l Tr., LLC v. McNamee*, 984 So. 2d 375, 378 (Ala. 2007); *Jones v. Ward*, 270 A.3d 1024, 1035-36 (Md. Ct. Spec. App. 2022). Looking for an answer elsewhere in the UCC, these courts resort to relying on the pertinent state's enactment of UCC Section 1-103—a provision that applies to the entire Code—which provides that "the principles of law and equity" "supplement [the code's] provisions" "[u]nless displaced by [its] particular provisions." *See, e.g.*, *Torres*, 233 A.3d at 433-34, 436-37; *McNamee*, 984 So. 2d at 378. *But cf. Jones*, 270 A.3d at 1036 (holding that the right of enforcement could be assigned without discussing Maryland's version of Section 1-103). The courts that have allowed enforcement then reason that the rule that an assignee "stands in the shoes" of the assignor qualifies as one of these "principles" and is not "displaced" by the silence of Section 3-309 before holding that a post-loss assignee is entitled to enforce a lost instrument. *See, e.g.*, *Torres*, 233 A.3d at 431-37; *McNamee*, 984 So. 2d at 378.

**{8}** Interpreting Section 55-3-309 de novo, *Baker v. Hedstrom*, 2013-NMSC-043, ¶ 10, 309 P.3d 1047, we find ourselves in substantial agreement with the latter line of cases. As we explain below, the text of Section 55-3-309 does not answer the question presented, and we therefore ascertain the Legislature's intent by looking to the NMUCC as a whole and to the overarching directives for construing the NMUCC that the Legislature provided in NMSA 1978, Section 55-1-103 (2005). Those directives lead us to hold that the assignment of a lost instrument by a person entitled to enforce it transfers the right of enforcement under Section 55-3-309 to the assignee, and that a district court may enter judgment in favor of an assignee if the court ensures that the borrower is adequately protected as required by Section 55-3-309(b).[3]

**{9}** "Our ultimate goal in construing a statute is to ascertain and give effect to the intent of the Legislature." *D.W. v. B.C.*, 2022-NMCA-006, ¶ 14, 504 P.3d 559 (internal quotation marks and citation omitted). We begin with "[t]he primary indicator of the Legislature's intent"—"the plain language of the statute." *Weatherford Artificial Lift Sys., LLC v. Clarke*, 2021-NMCA-065, ¶ 14, 499 P.3d 679 (alteration, internal quotation marks, and citation omitted). The plain language

---

[3]Our holding that the right to enforce a lost instrument may be conveyed by assignment makes it unnecessary to address Plaintiff's argument that it obtained standing by virtue of Rule 1-025(C) even if the NMUCC does not permit assignment of the entitlement to enforce a lost instrument.

of Section 55-3-309 provides that a person who is not in possession of an instrument must have had possession of and the right to enforce the instrument at the time the instrument was lost in order to enforce it. But the statutory text says nothing about whether the assignment of a lost instrument by a person who meets those conditions carries with it the right of enforcement. Put simply, Section 55-3-309 does not expressly prohibit or permit assignment of the right to enforce a lost instrument. *Compare* § 55-3-309, *with* NMSA 1978, § 41-5-12 (1976) (providing that "[a] patient's claim for compensation under the Medical Malpractice Act is not assignable"). Nor does it provide that the assignee of a lost instrument can or cannot bring suit to enforce it.

{10}     Because the plain language of the statute does not resolve the issue before us, we turn to canons of statutory construction to ascertain the Legislature's intent. *See State v. Porter*, 2020-NMSC-020, ¶ 16, 476 P.3d 1201. One canon looms especially large here: *expressio unius est exclusio alterius*, "the inclusion of one thing implies the exclusion of another." *Baker v. Hedstrom*, 2012-NMCA-073, ¶ 30, 284 P.3d 400, *aff'd on other grounds*, 2013-NMSC-043. Cases holding that the assignee of a lost instrument may not enforce it to in essence rest on the *expressio unius* canon. Said differently, we think the courts in those cases implicitly reasoned that, because the relevant enactment of UCC Section 3-309 specifies who *is* entitled to enforce a lost instrument (a person who "was in possession of the instrument and entitled to

8

enforce it when loss of possession occurred"), nobody else is entitled to enforce. That reasoning is generally beyond reproach as applied to Section 3-309. For example, although the statute affirmatively provides that a person *is* entitled to enforce a lost instrument if the person's lack of present possession is not the result of a "lawful seizure," Section 55-3-309(a), the obvious implication of the statutory language is that a person not in possession *is not* entitled to enforce an instrument that has been lawfully seized. Limiting the entitlement to enforce a lost instrument to persons identified in the statutory language is, by and large, a straightforward application of the "common-sense premise that when [legislatures] say one thing, they do not mean something else." 2A Norman J. Singer & Shambie Singer, *Sutherland Statutes & Statutory Construction* § 47:23 (7th ed. 2021).

{11}     But *expressio unius* is neither an "inflexible determinant of legislative intent," *Swink v. Fingado*, 1993-NMSC-013, ¶ 28, 115 N.M. 275, 850 P.2d 978, nor an "end [in] itself." *State v. Santillanes*, 2001-NMSC-018, ¶ 17, 130 N.M. 464, 27 P.3d 456 (internal quotation marks and citation omitted). And that canon is of limited value in determining whether the Legislature intended for a right codified by statute to be assignable. "An 'assignment' is a transfer of property or some other right from one person (the 'assignor') to another (the 'assignee')." *Quality Chiropractic, PC v. Farmers Ins. Co. of Ariz.*, 2002-NMCA-080, ¶ 6, 132 N.M. 518, 51 P.3d 1172 (internal quotation marks and citation omitted). Following an assignment, an

assignee usually has "the same rights" as the assignor did because the law for relevant purposes treats the assignee as the assignor: the assignee "stands in the [assignor's] shoes." *Inv. Co. of the Southwest v. Reese*, 1994-NMSC-051, ¶¶ 29-31, 117 N.M. 655, 875 P.2d 1086; *see Leger v. Gerety*, 2022-NMSC-007, ¶ 41, 503 P.3d 349; *Wilson v. Berger Briggs Real Est. & Ins., Inc.*, 2021-NMCA-054, ¶¶ 25-26, 497 P.3d 654. *See generally* 6A C.J.S. *Assignments* § 111 (2022) (stating that "[an] assignee's rights are derivative"). So, when a statute specifies that a certain person has a right, it does not necessarily mean that that right cannot be conveyed to and exercised by a different person—i.e., the assignee standing in the shoes of the assignor. *See, e.g.*, *Chevron Res. v. N.M. Superintendent of Ins.*, 1992-NMCA-081, ¶¶ 4-5, 114 N.M. 371, 838 P.2d 988 (noting that an employee who had been assigned his employer's right to reimbursement from the New Mexico Subsequent Injury Fund stood in the position of the employer); *cf. Reese*, 1994-NMSC-051, ¶ 35 (reasoning that, although a statutory heading addressed the "[s]tatute of limitations for actions brought by [a] conservator or receiver[,]" "nothing in the statute either prohibit[ed] or permit[ted] assigning the limitations period" to a person who was neither a conservator or receiver (emphasis, internal quotation marks, and citation omitted)). Our Supreme Court has previously rejected the proposition that the mere absence of express "statutory authorization" renders a right conferred by statute unassignable. *Reese*, 1994-NMSC-051, ¶¶ 35, 45.

10

{12}    In our view, the strongest evidence of legislative intent with respect to the proper interpretation of Section 55-3-309 is not the statute's language read in isolation; it is that language considered in the context of "the broader act in which [Section 55-3-309 is] situated"—i.e., the NMUCC. *Chatterjee v. King*, 2012-NMSC-019, ¶ 12, 280 P.3d 283. Critically, the NMUCC provides directives for courts tasked with interpreting its provisions.  Subsection (a) of Section 55-1-103 requires courts to "liberally construe[] and appl[y]" the NMUCC to promote the goals of "simplify[ing], clarify[ing] and moderniz[ing] the law governing commercial transactions"; "permit[ting] the continued expansion of commercial practices through custom, usage and agreement of the parties"; and "mak[ing] uniform the law among the various jurisdictions." And in Subsection (b) of the same statute, the Legislature, evidently recognizing the "futil[ity]" of attempting to draft an "all-encompassing" statutory code that "anticipate[s] every eventuality[,]" *Reese*, 1994-NMSC-051, ¶ 28, expressly provided that "the principles of law and equity" supplement the NMUCC "[u]nless displaced by [its] particular provisions." Section 55-1-103(b). Relying on both subsections, we conclude that the rule that an assignee stands in the assignor's shoes supplements Section 55-3-309 so that assignment of a lost instrument carries with it any entitlement to enforce belonging to the assignor.

{13}    The legislative goals underlying the NMUCC weigh in favor of permitting the assignee of a lost instrument to enforce it. We base that conclusion on two of the

goals articulated in Section 55-1-103(a): (1) "permit[ting] the continued expansion of commercial practices through custom, usage and agreement of the parties" and (2) "mak[ing] uniform the law among the various jurisdictions." As to the first, were we to hold that the NMUCC does not allow the assignee of a lost instrument to enforce it, lost instruments would be rendered practically unmarketable. Parties are exceedingly unlikely to purchase lost instruments that they cannot enforce. *Cf. Reese*, 1994-NMSC-051, ¶ 38 (pointing out the unreasonableness of assuming that the parties intended to "enter an agreement in which a note that was enforceable before it was assigned[] became unenforceable simply because it was assigned"). Our choice is thus between a rule that would foster development of the market for lost instruments and a rule that would restrict it, and we think it apparent that only the former will "permit the continued expansion of commercial practices." Section 55-1-103(a)(2).

{14}     Of at least equal importance is the contribution that a rule permitting post-loss assignees to enforce would make toward reaching "uniform[ity in] the law among the various jurisdictions." Section 55-1-103(a)(3). Neither our Legislature nor this Court is capable of *achieving* that goal when it comes to Section 55-3-309 because the various jurisdictions have not uniformly enacted or interpreted the model statute: no matter which interpretation of Section 55-3-309 we choose, our decision here will

12

have the effect of putting our state on one side of a jurisdictional split.[4] Yet we have the benefit of some thirty years of legal developments in other jurisdictions to inform our assessment of which interpretation will better further uniformity. And the momentum is on the side of permitting enforcement by a post-loss assignee. In 2002, Section 3-309 of the model UCC was amended (without further explanation) "to reject the result" the United States District Court for the District of Columbia reached in *Dennis Joslin Co.* in 1997. U.C.C. § 3-309 cmt. 2.[5] Since 2002, nineteen states (and the District of Columbia) have enacted the amended version of UCC Section 3-309.[6] Although twenty-nine states retain statutes virtually identical to Section 55-3-

---

[4]Conspicuously absent from the fray is the State of New York, which retains a statute loosely modeled on UCC Section 3-804, a provision of the original, 1951 uniform act and the predecessor to UCC Section 3-309. *See* N.Y. U.C.C. Law § 3-804 (McKinney 1963); U.C.C. § 3-309 cmt. 1.

[5]We disagree with Defendant's suggestion that our Legislature's failure to enact the 2002 version of UCC Section 3-309 is indicative of a legislative intent to reject the results that would obtain under that statute. *See Cable One, Inc. v. N.M. Tax'n & Revenue Dep't*, 2018-NMCA-017, ¶ 25, 412 P.3d 1121 (cautioning "parties and district courts against jumping to and relying on legislative inaction as somehow providing evidence of legislative intent"). The last time the Legislature expressed its intent regarding enforcement of lost instruments was when it enacted Section 55-3-309, a statute containing language that has divided courts throughout the country and that a number of courts have concluded does not prevent enforcement by an assignee. The Legislature might justifiably have believed that courts in our state would reach a similar conclusion.

[6]Ala. Code § 7-3-309 (2009); Ark. Code Ann. § 4-3-309 (West 2005); D.C. Code Ann. § 28:3-309 (West 2013); Fla. Stat. Ann. § 673.3091 (West 2004); Ind. Code Ann. § 26-1-3.1-309 (West 2010); Iowa Code Ann. § 554.3309 (West 2006); Kan. Stat. Ann. § 84-3-309 (West 2005); Ky. Rev. Stat. Ann. § 355.3-309 (West 2006); Mich. Comp. Laws Ann. § 440.3309 (West 2014); Minn. Stat. Ann. § 336.3-309 (West 2003); Miss. Code. Ann. § 75-3-309 (West 2010); Mo. Ann. Stat. § 400.3-

309,[7] appellate courts in some of those states have interpreted their state's statute to permit the assignee of a lost instrument to enforce it. *E.g.*, *Torres*, 233 A.3d at 437; *Jones*, 270 A.3d at 1036; *Bobby D. Assocs. v. DiMarcantonio*, 751 A.2d 673, 676 (Pa. Super. Ct. 2000). It would be hazardous to assume that courts in at least some of the jurisdictions where the issue is still open will not join them, and we are unaware of a single instance in which a state legislature has rejected that interpretation by enacting a decidedly non-uniform statute to prohibit enforcement by post-loss assignees. In view of the current legal landscape, we have no difficulty

309 (West 2021); Neb. Rev. Stat. Ann. U.C.C. § 3-309 (West 2003); Nev. Rev. Stat. Ann. § 104.3309 (West 2005); N.H. Rev. Stat. Ann. § 382-A:3-309 (2004); Ohio Rev. Code Ann. § 1303.38 (West 2016); Okla. Stat. Ann. tit. 12A, § 3-309 (West 2009); S.C. Code Ann. § 36-3-309 (2008); Tenn. Code Ann. § 47-3-309 (West 2003); Tex. Bus. & Com. Code Ann. § 3.309 (West 2005).

[7]Alaska Stat. Ann. § 45.03.309 (West 1993); Ariz. Rev. Stat. Ann. § 47-3309 (1993); Cal. Com. Code § 3309 (West 1992); Colo. Rev. Stat. Ann. § 4-3-309 (West 1994); Conn. Gen. Stat. Ann. § 42a-3-309 (West 1991); Del. Code Ann. tit. 6, § 3-309 (West 1995); Ga. Code Ann. § 11-3-309 (West 1996); Haw. Rev. Stat. Ann. § 490:3-309 (West 1991); Idaho Code Ann. § 28-3-308 (West 1993); 810 Ill. Comp. Stat. Ann. 5/3-309 (West 1992); La. Stat. Ann. § 10:3-309 (1992); Me. Rev. Stat. Ann. tit. 11, § 3-1309 (1993); Md. Code Ann., Com. Law § 3-309 (West 1996); Mass. Gen. Laws Ann. ch. 106, § 3-309 (West 1998); Mont. Code Ann. § 30-3-309 (West 1991); N.J. Stat. Ann. § 12A:3-309 (West 1995); N.C. Gen. Stat. Ann. § 25-3-309 (West 1995); N.D. Cent. Code Ann. § 41-03-35 (West 1991); Or. Rev. Stat. Ann. § 73.0309 (West 1993); 13 Pa. Stat. and Cons. Stat. Ann. § 3309 (West 1992); R.I. Gen. Laws Ann. § 6A-3-309 (West 2000); S.D. Codified Laws § 57A-3-309 (1994); Utah Code Ann. § 70A-3-309 (West 1993); Vt. Stat. Ann. tit. 9A, § 3-309 (West 1993); Va. Code Ann. § 8.3A-309 (West 1992); Wash. Rev. Code Ann. § 62A.3-309 (West 1993); W. Va. Code Ann. § 46-3-309 (West 1993); Wis. Stat. Ann. § 403.309 (West 1995); Wyo. Stat. Ann. § 34.1-3-309 (West 1991).

14

concluding that the goal of uniformity will be best served by allowing the assignment of the right to enforce a lost negotiable instrument.

{15} Because Section 55-1-103(a) directs us to interpret the NMUCC in a manner that furthers its purposes, we should construe Section 55-3-309 to "codif[y] an assignable right," *Reese*, 1994-NMSC-051, ¶ 34, if the statute will bear that construction. We think that it will. As noted, Section 55-1-103(b) explicitly authorizes courts to "supplement" the NMUCC with "the principles of law and equity" unless those principles are "displaced by [the NMUCC's] particular provisions." *See generally Associated Home & RV Sales, Inc. v. Bank of Belen*, 2013-NMCA-018, ¶ 7, 294 P.3d 1276 ("Common law principles are not preserved in an area which is thoroughly covered by the [NMUCC] simply because they are not expressly excluded." (internal quotation marks and citation omitted)); § 55-1-103 cmt. 2 ("[NMUCC] preemption . . . extends to displacement of other law that is inconsistent with the purposes and policies of the [NMUCC], as well as with its text."). When it comes to lost instruments, the NMUCC does not displace[8] a rule permitting the assignee of an instrument to enforce it.

---

[8]Because it is difficult to understand how the NMUCC could "displace" principles that did not already exist, the text of Section 55-1-103(b) suggests that the "principles of law and equity" to which the statute refers are those found in "existing bodies of law" at the time of the enactment of a particular NMUCC provision. Section 55-1-103 cmt. 2. Although Defendant asserts that "the common law did not favor transferability of a lost note[,]" the parties have not cited, and we are unaware

{16}     As explained below, Article 3 sets out with great specificity the methods and potential consequences of transferring the entitlement to enforce an instrument that has not been lost. This detailed statutory scheme—pursuant to which a transferee may obtain unassailable title to an instrument—implicitly but necessarily precludes the application of ordinary assignment law principles to enable enforcement of a non-lost instrument by an assignee. But the same is not true in the context of lost instruments. Article 3 says nothing about how the right to enforce a lost instrument can be transferred. And while Appellant urges us to infer from this silence that the

---

of, any authority addressing whether New Mexico law permitted the assignee of a lost instrument to bring suit upon it before our state adopted the NMUCC.

Although that is an interesting question, we think the answer, which it appears would need to be reached through guesswork, does not control the outcome here. Courts have always had the authority to modify common law rules to adapt to changing legal and societal conditions, and equity is, if anything, more flexible than the common law. *See Lopez v. Maez*, 1982-NMSC-103, ¶ 9, 98 N.M. 625, 651 P.2d 1269 (stating that "because common law rules were judicially created, the judiciary ha[s] the power to change them" and that "the revision of an outmoded common law doctrine is within the competence of the judiciary"); *Plaza Nat'l Bank v. Valdez*, 1987-NMSC-105, ¶ 16, 106 N.M. 464, 745 P.2d 372 ("Sitting in its equitable capacity, a court may avail itself of those broad and flexible powers which are capable of being expanded to deal with novel cases and conditions. Equity has the inherent power to supply a method in any suit to protect the rights of all interested parties." (citation omitted)). While the common law and equity practice, in a general sense, were the "backdrop" against which the NMUCC was enacted, § 55-1-103 cmt. 2, we see nothing in Section 55-1-103 evidencing a legislative intent to abrogate courts' historical authority to fashion evolving rules, to flash-freeze the common law or rules of equity practice as they existed at any given point in time. Section 55-1-103(a)'s mandate that the NMUCC be "liberally construed" to "modernize the law governing commercial transactions" applies to Section 55-1-103(b) no less than to any other provision of the NMUCC.

16

Legislature intended the right to enforce a lost instrument to be non-transferrable, we think that it instead "expresses no intention one way or the other." *Leyba v. Renger*, 1992-NMSC-061, ¶ 9, 114 N.M. 686, 845 P.2d 780, and therefore does not prevent the enforcement of a lost instrument by an assignee.

{17}    The entitlement to enforce a negotiable instrument that *has not* been lost is not a "right[]" or "privilege[]" that can be assigned like any other. *Reese*, 1994-NMSC-051, ¶ 31. Under Article 3, "[t]he right to enforce an instrument and ownership of the instrument are two different concepts." NMSA 1978, § 55-3-203 cmt. 1 (1992); *see also* § 55-3-301 ("A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument."). The assignment of a negotiable instrument may convey ownership of the instrument to the assignee without the right to enforce the instrument. *See Benton v. Albuquerque Nat'l Bank*, 1985-NMCA-039, ¶ 13, 103 N.M. 5, 701 P.2d 1025 ("An assignment is an act or expression of intention by which one person causes a transfer of a right or interest in property."); § 55-3-203 cmt. 1 ("Ownership rights in instruments may be determined by the principles of the law of property, independent of Article 3."); *cf.* Elizabeth Renuart, *Uneasy Intersections: The Right to Foreclose & the U.C.C.*, 48 Wake Forest L. Rev. 1205, 1225 (2013) ("Article 9 [of the UCC] now governs the sale of promissory notes."). However, even if an assignee acquires ownership of an instrument by virtue of the assignment, the assignee obtains no right to enforce the

17

instrument until the instrument is physically "transferred" to the assignee.[9] Section 55-3-203(a)-(b); *see also id.* cmt. 1 ("Although [a document conveying all of X's right, title, and interest in an instrument to Y] may be effective to give Y a claim to ownership of the instrument, Y is not a person entitled to enforce the instrument until Y obtains possession of the instrument."); Grant Gilmore, *The Commercial Doctrine of Good Faith Purchase*, 63 Yale L.J. 1057, 1064 (1954) (explaining that, under the law of negotiable instruments, a "debt claim is 'merged' into the paper evidencing the claim," and "[t]ransfer of the claim can only be made by physical delivery" (emphasis omitted)).[10] Before that point, the owner's recourse is not against the

---

[9]Persuaded by the reasoning of the Alabama Supreme Court in addressing a practically identical issue in *McNamee*, we conclude that enforcement by a post-loss assignee is not addressed by Section 55-3-203, under which "[t]ransfer of an instrument . . . vests in the transferee any right of the transferor to enforce the instrument." As the *McNamee* court explained, " 'transfer' of an instrument" under that statute "can be accomplished only by its 'delivery' to the transferee[,]" 984 So. 2d at 378, and the NMUCC elsewhere defines "delivery" as the "voluntary transfer of possession" of an instrument. NMSA 1978, § 55-1-201(b)(15) (2005). *But cf.* § 55-1-201(a) (providing that the terms defined in Section 55-1-201 "have the meanings stated" "[u]nless the context otherwise requires"). "If an instrument is lost, destroyed, or stolen, it is no longer 'possessed' by its owner and, as a result, cannot be 'delivered' as required to effect a transfer of the instrument under" Section 55-3-203. *McNamee*, 984 So. 2d at 378; *see also Locks v. N. Towne Nat'l Bank of Rockford*, 451 N.E.2d 19, 22 (Ill. App. Ct. 1983). *But see DiMarcantonio*, 751 A.2d at 676.

[10] Section 55-3-309 replaced a statue that permitted enforcement of lost instruments without mentioning possession at the time of loss: former NMSA 1978, Section 55-3-804 (1961, repealed 1992). *But cf. W. Nat'l Bank v. Rives*, 927 S.W.2d 681, 685 (Tex. App. 1996) (interpreting the Texas version of former UCC Section 3-804 "to require possession by the claimant prior to loss or destruction"). That statute provided in pertinent part that the "owner" of a lost instrument could

18

person obligated to pay the instrument, but the person with possession. *See* NMSA 1978, § 55-3-306 (1992) ("A person taking an instrument, other than a person having rights of a holder in due course, is subject to a claim of a property or possessory right in the instrument or its proceeds, including a claim to rescind a negotiation and to

"maintain an action in his own name and recover from any party liable thereon upon due proof of his ownership, the facts which prevent his production of the instrument and its terms." Although we have considered the change in language in light of the presumption that "[w]hen the [L]egislature enacts a new statute . . . it intend[s] to establish new law or to change law as it previously existed" *Leyba*, 1992-NMSC-061, ¶ 10, we are not persuaded that the former statute's allusion to ownership should figure into our analysis because the change may just as well have been intended to make clear that proof of ownership is not a prerequisite to enforcement as to impose an absolute requirement of prior possession on owners of lost instruments. *Compare Fales v. Norine*, 644 N.W.2d 513, 519 (Neb. 2002) (stating that, in replacing Nebraska's version of former UCC Section 3-804 with the 1990 version of UCC Section 3-309, that state's legislature "intended to clarify that the plaintiff need not satisfy the definition of 'owner' to enforce an instrument"), *and Jones*, 270 A.3d at 1035 (stating that Maryland's enactment of UCC Section 3-309 "expand[ed] those who are entitled to enforce a lost instrument from the former section"), *with* James N. Duca, *Now Where Did That Mortgage Note Go?* 16 Haw. B.J. 71, 80 (2013) (arguing that the fact of UCC Section 3-309's enactment is itself a "key indicator of legislative intent" because the statue replaced former UCC Section 3-804, which was "much more permissive with respect to the enforcement rights of the assignees of lost notes"). *See generally* § 55-3-305(c) (providing that, under certain circumstances, *an obligor* may raise another person's property rights to an instrument as a defense). The most likely source of a persuasive explanation, the official comment to Section 55-3-309, indicates no intention to work a sweeping change on the assignability of the right to enforce a lost instrument, but its content is as unilluminating as it is accurate: "[t]he rights stated" in the new statute are indeed "those of 'a person entitled to enforce the instrument' at the time of loss rather than those of an 'owner' as in former Section 3-804." Aware of no demonstrably correct explanation for the shift in emphasis from ownership to entitlement to enforce, we decline to draw an inference either way from Section 55-3-309's legislative history.

recover the instrument or its proceeds."); 2 Frederick M. Hart, Erik F. Gerding & William F. Willier, *Negotiable Instruments Under the Uniform Commercial Code* § 12.04 (2022) ("The owner without possession can . . . obtain possession from the person who has the instrument through the use of a writ of replevin."). The distinction between ownership and enforcement applicable to non-lost instruments necessarily follows from the overall scheme of Article 3, which specifically sets out when the transferee of a negotiable instrument may enforce it and, critically, may give a transferee better title than the true owner of the instrument. Regardless of ownership, a person who qualifies as the holder of an instrument—"the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession[,]" § 55-1-201(b)(21)(A)—may "negotiate" that instrument by transferring possession "to a person who thereby becomes [the instrument's] holder." Section 55-3-201(a); *see also* § 55-3-201(b) (providing that an instrument payable to bearer "may be negotiated by transfer of possession alone," while an instrument payable to an identified person can only be negotiated by a transfer of possession and indorsement). Under certain conditions, the new holder may qualify as a "holder in due course," NMSA 1978, § 55-3-302(a) (1992), and Article 3 makes plain that a holder in due course has the right to enforce the instrument free and clear of any and all ownership-based defenses to payment. Section 55-3-306 ("A person having rights of a holder in due course takes free of [a

claim of a property or possessory right in an instrument or its proceeds].”); § 55-3-305(b) (providing that certain defenses may not be asserted against a holder in due course); *see also* 2 Hart, Gerding & Willier, *supra*, § 12.07 (“If [a] person in possession is a holder in due course that person gets ‘new title’ by virtue of being a holder in due course which title is good as against all who claim an interest in the instrument.”); James Steven Rogers, *The Myth of Negotiability*, 31 B.C. L. Rev. 265, 266 (1990) (“[U]nlike [other forms] of property, if a negotiable instrument is stolen and passed to a purchaser who qualifies as a holder in due course, the purchaser takes free of the claim of the true owner.”).

{18}    Permitting assignment of the right to enforce an instrument that is not lost would thus subject the person obliged to pay the instrument to a risk of double liability: a holder in due course could enforce the instrument against the person obliged to pay it, and that person would be unable to rely on an assignee’s purported ownership of the instrument as a defense. *See* 2 Hart, Gerding & Willier, *supra*, § 12.04 (“Since rights of ownership are cut off when a holder in due course takes an instrument, the rule [requiring possession] protects the obligor from the possibility of having to pay twice; once to the owner and then to the holder in due course.”); *see also Johnston*, 2016-NMSC-013, ¶ 22 (“[S]tanding [requirements] in foreclosure actions . . . protect[] homeowners against double liability[.]”); *Inv. Serv. Co. v. Martin Bros. Container & Timber Prods. Corp.*, 465 P.2d 868, 872 (Or. 1970) (“The

21

most important [probable basis for the requirement of possession] is the danger of exposing the drawer to double liability if the drawer is required to pay one who does not have physical possession of the note."). Strict adherence to Article 3's requirement of possession as a prerequisite for enforcement is necessary to prevent that risk when an instrument has not been lost.

{19}     But these legal principles can easily coexist with a rule permitting assignment of the right to enforce a lost instrument. Section 55-3-309 is an outlier within the statutory scheme governing the enforcement of negotiable instruments under Article 3 of the UCC. With one or two exceptions not relevant here,[11] the statute is the sole mechanism by which a person who does not have present possession of an instrument may enforce it. *See* § 55-3-301(i) (providing that "the holder of the instrument" is a person entitled to enforce it); § 55-3-301(ii) (providing that a "nonholder in possession" with the rights of a holder is a person entitled to enforce an instrument). The very existence of that mechanism is at odds with the historically-rooted[12] principle underlying Article 3: that a negotiable instrument is "a reified right

---

[11]*See* NMSA 1978, § 55-3-312 (2009) (providing for a claim to the amount of a lost certified check, cashier's check, or teller's check); NMSA 1978, § 55-3-418(d) (1992) (providing that, "if an instrument is paid . . . by mistake and the payor . . . recovers payment . . . the instrument is deemed not to have been paid . . . and the person from whom payment is recovered has rights as a person entitled to enforce the dishonored instrument").

[12]It appears reasonably clear that the law of negotiable instruments developed, at least in part, as a commercially useful workaround to the common law's historical refusal, long since abandoned, to sanction the transfer of an intangible right to

to payment[,]" § 55-3-203 cmt. 1,[13] which by hypothesis can be enforced only by the person with present possession. *See* 2 Hart, Gerding & Willier, *supra*, § 4.01 ("The obligation [represented by a negotiable instrument] is reified, meaning that [it] is embodied in the piece of paper; possession of the instrument is essential to enforcing the transferee's rights.").

{20}    Although allowing the enforcement of lost notes creates the same risk of double liability that would flow from other rules permitting the enforcement of instruments by persons not in possession, *see* § 55-3-309 cmt., Section 55-3-309(b) contains a built-in safeguard against the risk of double liability. Under that subsection, "[a] court may not enter judgment in favor of the person seeking

---

payment by another person. *See generally* John A. Russell, *Chitty on Bills of Exchange and Promissory Notes* 3 (11th ed. 1878) ("[T]he common law . . . refused to sanction the assignment of a chose in action, that is, of any mere right of suit with regard to property, real or personal." (italicization omitted)); 2 Hart, Gerding & Willier, *supra*, § 1.03[4] ("The rule against the transfer of intangible rights was the first hurdle which had to be overcome before the bill of exchange could acquire a negotiable character."); Edward Jenks, *On the Early History of Negotiable Instruments*, 9 L.Q. Rev. 70, 76 (1893) ("[A] chose in action does not permit of that corporeal and formal transfer which is essential to the legality of early conveyances." (italicization omitted)); Restatement (Second) of Contracts ch. 15, intro. note (Am. Law Inst. 1981) (explaining that "[t]he historic rule . . . that a chose in action could not be assigned" "was progressively narrowed by the reception into the common law of doctrines developed in the law merchant"—under which "mercantile instruments . . . were held transferable by delivery, or by indorsement and delivery"— "and in the courts of equity and by statute" (internal quotation marks omitted)).

[13] Where we rely on the non-binding official comments to the NMUCC, we find them persuasive. *See generally First State Bank at Gallup v. Clark*, 1977-NMSC-088, ¶ 5, 91 N.M. 117, 570 P.2d 1144.

23

enforcement [of a lost instrument] unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument." *Id.* Thus, a person suing on a lost instrument may be required to pay the temporary price[14] of assuring the person obliged to pay that the payment sought will be the only one to come out of the obliged person's pockets.

{21}    Ultimately, we conclude that the UCC does not displace assignment law in the context of lost instruments because the theoretical and practical reasons for formalistically clinging to the requirement of possession imposed by Article 3's other enforcement provisions do not apply in that context.[15] The concept that an instrument is a "reified right to payment" goes out the window the moment the

---

[14] Historically, that price was a potentially expensive one. *See generally* NMSA 1929, § 105-837 (1897) ("To entitle a party to [recover on a lost note or bill], he, or some responsible party for him, shall execute a bond to the adverse party in a penalty at least double the amount of such note or bill, and with two sufficient securities, to be approved by the court in which the trial shall be had, conditioned to indemnify the adverse party against all claims by any other person on account of such note or bill and against all costs and expense by reason of such claims.").

[15] Another rationale for the requirement of possession is that it provides a simple and clear method for ascertaining who is entitled to enforce. *See Johnston*, 2016-NMSC-013, ¶ 21; *Inv. Serv. Co.*, 465 P.2d at 873. We see no reason to think that permitting enforcement of lost instruments by assignees will seriously undermine this policy. Although assignments are commonplace nowadays, no intolerable confusion has resulted. And the law ordinarily provides obligors with some measure of clarity and certainty by requiring an assignee to inform the obligor of the assignment. *See, e.g.*, *Giannini v. Wilson*, 1939-NMSC-052, ¶ 16, 43 N.M. 460, 95 P.2d 209.

24

instrument does, and permitting the assignee of a lost instrument to enforce is no more inconsistent with that theory than is permitting a person to bring suit on a lost instrument in the first place. And the protection against double liability provided by Section 55-3-309(b) provides a buffer against the displacement that the possession-based provisions of Article 3 work on the law of assignments where an instrument is not lost. Critically, there is no reason to think that Subsection (b) will be any less effective in preventing double liability in cases brought by assignees of lost instruments than it is in protecting against double liability in cases brought by persons who claim to have lost the instrument themselves.[16]

{22}    We close by emphasizing the essential role that district courts play in applying Subsection (b) in a manner that meaningfully protects persons obliged to pay negotiable instruments, both from the risk of double liability and from the burdens of repetitious litigation. Subsection (b) affords district courts discretion with respect to how to provide such protection: they may do so "by any reasonable means." Other jurisdictions have recognized a variety of means that could be reasonable, including written indemnification agreements, surety bonds, letters of credit issued by financial institutions, and deposits of cash collateral with the court. *See, e.g.*, Fla.

---

[16]Although the provisions of Subsection (b) come into play only after a party has established its entitlement to recover pursuant to Subsection (a), nothing in our opinion excuses plaintiffs, whether assignees or not, from otherwise complying with the settled requirement that "standing . . . be established as of the time of filing suit." *Johnston*, 2016-NMSC-013, ¶ 20.

25

Stat. Ann. § 702.11(1)(a)-(e) (West 2013); *DiMarcantonio*, 751 A.2d at 676. Ensuring that the interests of a person obligated to pay are protected in a reasonable manner, by the means we have listed or others, is a task that Subsection (b) assigns in the first instance to the district court, which must make that determination based on the facts of each case.

{23}    While we do not go so far as to set out inflexible rules, district courts must closely scrutinize attempts to enforce lost instruments. A person who undertakes liability on a negotiable instrument has no reason to expect that the instrument will end up as, in effect, an ordinary intangible chose in action, freely assignable to and enforceable by persons who have never even seen it. The misfortune or negligence of the person entitled to enforce an instrument should not be visited upon the person obliged to pay. To ensure that Subsection (b) serves its intended purpose and to facilitate meaningful appellate review, we hold that, when a district court enters judgment on behalf of a party seeking to enforce a lost note, the court must make the requisite finding—that the person obligated to pay is adequately protected—explicitly and explain why its chosen means afford adequate protection in a reasonable manner under the circumstances. A failure to make and support that finding will constitute an abuse of discretion.

## II.    Defendant's Cross-Appeal Lacks Merit

26

{24} In her cross-appeal, Defendant challenges the district court's denial of her motion for summary judgment insofar as it was based on the second sentence of Section 55-3-305(c), which provides that "[a]n obligor is not obliged to pay [an] instrument if the person seeking enforcement of the instrument does not have rights of a holder in due course and the obligor proves that the instrument is a lost or stolen instrument." Defendant contends that she established a defense to payment under the plain language of the statute because it was undisputed that Plaintiff was not a holder in due course of the note and that the note was lost. We disagree. As the district court recognized, although it may be "tempt[ing] to go along with" Defendant's argument "[i]f one looks only at the last sentence of [Section] 55-3-305(c)," that sentence "must be viewed in the larger context of [Section] 55-3-305(c) . . . , [Section 55-]3-305 and, indeed . . . , Article 3." *See Miller v. Bank of Am., N.A.*, 2015-NMSC-022, ¶ 12, 352 P.3d 1162 ("A statutory subsection may not be examined in a vacuum but must be considered in reference to the statute as a whole and to statutes dealing with the same general subject matter."); *Key v. Chrysler Motors Corp.*, 1996-NMSC-038, ¶ 14, 121 N.M. 764, 918 P.2d 350 ("[A]ll parts of a statute must be read together to ascertain legislative intent."). This context makes clear that Defendant's argument lacks merit.

{25} Reading each sentence of Subsection (c) as part of a "harmonious whole," *Key*, 1996-NMSC-038, ¶ 14, we think it apparent that the statute in its entirety

27

addresses the *jus tertii*—i.e., third-party rights—defenses available to the obligor on a negotiable instrument. Its first sentence addresses the circumstances under which an obligor may "assert against the person entitled to enforce the instrument a defense, claim in recoupment or claim to the instrument . . . of another person." Section 55-3-305(c). Following this pattern, the crucial second sentence permits an obligor to raise as a defense the rights of a person who has lost an instrument or from whom an instrument has been stolen. An obligor is not liable on a lost or stolen instrument *produced* by a person who does not have the rights of a holder in due course. But, contrary to Defendant's argument, Subsection (c) does not create a defense against enforcement of an instrument that *cannot be produced* by the person seeking enforcement because it has been lost by or stolen from that person.[17] The posited defense has no relation to the concern for third-party rights underlying Subsection (c).

**{26}** Moreover, Defendant's reading of the statute would create broader tension within Article 3 because it conflicts with the enforcement mechanism for lost or stolen instruments set out in Section 55-3-309. *See generally Leger*, 2022-NMSC-007, ¶ 33 (stating that courts should "avoid finding conflict where a statute can be

---

[17]Theoretically, a person who finds or steals an instrument could go on to lose the instrument or have it stolen by somebody else. Nothing in this opinion prevents an obligor from raising the initial loss or theft—rather than the loss by or theft from the person seeking enforcement—in a suit brought under Section 55-3-309 in those circumstances.

28

interpreted harmoniously"). Subsection (b) of Section 55-3-309 provides that the "person seeking enforcement of an instrument under Subsection (a) must prove the terms of the instrument and the person's right to enforce the instrument." In pertinent part, a person has a "right to enforce" under Subsection (a) only if "the person cannot reasonably obtain possession of the instrument because . . . its whereabouts cannot be determined, or it is in the wrongful possession of [another] person." Thus, under the plain language of Section 55-3-309, the *person seeking enforcement* of a lost or stolen instrument has the burden of proving that the instrument is lost or stolen. But under Defendant's construction of Section 55-3-305(c), *the obligor* would have the burden of "prov[ing] that the instrument is a lost or stolen instrument" in a suit brought under Section 55-3-309. Because Defendant's reading of the statute would create disharmony when our task is to achieve the opposite, we hold that the last sentence of Section 55-3-305(c) does not exempt obligors from paying lost or stolen instruments in cases where enforcement is sought by a person without the rights of a holder in due course.

**CONCLUSION**

{27}    We reverse and remand to the district court for further proceedings consistent with this opinion.

29

**{28}** **IT IS SO ORDERED.**

_____

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

_____

**JACQUELINE R. MEDINA, Judge**

_____

**MEGAN P. DUFFY, Judge**